## THE FIRST N. B. OF TAMAQUA v. JOHN A. SHOE-MAKER, FOR USE OF D. SHEPP & CO.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued April 22, 1887—Decided October 3, 1887.

1. Although there may be funds of the drawer in the bank sufficient to pay his check at the time of presentment, yet the payee has no right of action upon the check when there has been no acceptance by the bank.
2. The drawer of a bank check payable to another has no right of action upon the check himself; therefore, where a suit has been brought by the payee against the drawee, the record may not be amended by substituting as the plaintiff the drawer for the use of the payee.
3. Although the drawer of a bank check may recover in tort damages incurred from the dishonor of his check, or in assumpsit the balance of a credit in his favor, yet where such rights of action are barred by the statute of limitations, it is error to permit an amendment substituting the drawer to the use of the payee as plaintiff in a suit brought upon the check by the payee alone.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 363 January Term 1886, Sup. Ct.; court below, No. 876 September Term 1874, C. P.

The action was begun by summons in assumpsit on August 24, 1874, by Daniel Shepp and J. B. Hursh, trading as Daniel Shepp & Co., against the First National Bank of Tamaqua. The declaration, filed April 15, 1875, contained the common counts, and a special count for the amount of a check drawn by John A. Shoemaker to the order of Daniel Shepp & Co. upon the First National Bank of Tamaqua, for $399.31, dated August 26, 1864, and averred funds of said Shoemaker in bank to the amount of $1,000, the presentment of said check to the bank on the day of its date and the refusal of the bank to pay it. The pleas of non assumpsit, nil debet, etc., were filed the same day.

On the trial on November 24, 1885, before O. P. BECHTEL, J., evidence was introduced to show that on August 26, 1874,

John A. Shoemaker was indebted to the plaintiff firm in over $1,300 and gave said firm the check described on account thereof, (the amount being the exact amount of the firm's account for May,) and that on the same day the firm indorsed said check, presented it for payment and payment was refused; that the check was then protested for non-payment and returned to the plaintiff firm; that at the date of the check said Shoemaker had a deposit with the bank exceeding the amount of the check.

Mr. Shoemaker, the drawer, testified on cross-examination that on the date of the check he was indebted to the bank upon a note of the Tamaqua Rolling Mill for $467.71 which the bank had discounted for him and which matured that day, and that before making the check in suit to the plaintiff firm he had gone to the bank himself with a check for his deposit and payment was refused.

The check was then offered in evidence, but the defendant objected:

(1.) That the holder of a check cannot bring suit in his own name against the bank; that it is not an assignment of the funds upon which he can bring suit in his own name; (2.) the evidence as already in shows that on that day there was due to the bank from John A. Shoemaker, as indorser, the sum of $467.71, and there is no evidence there was any balance in bank to meet this note.

The court: The impression we have of the offer is that it would be evidence. We do not feel satisfied what the effect of the check is. We have a recollection of a much later authority than any of those mentioned here, but for the present we will admit it and if we have opportunity will look at the question further.[1]

The check having been admitted, the plaintiff's counsel moved to amend the record by adding the name of "John A. Shoemaker to the use of D. Shepp & Co." as plaintiffs. The defendant's counsel objected.

The court: We think the amendment asked for is allowable. We will allow the amendment and place upon the record, "John A. Shoemaker, to the use of the present plaintiffs, Daniel Shepp and J. B. Hursh, trading as D. Shepp & Co."[2]

The evidence on the part of the defendant was to establish

that in June, 1874, the bank had discounted for the credit of Mr. Shoemaker a note of the Tamaqua Rolling Mill Co., to his order, for $467.71 which would be due on August 26th; that on August 18th the bank discounted another note of the Tamaqua Rolling Mill Co. to the order of said Shoemaker for $396.44 and for his credit, on the condition, assented to by him, that its proceeds should be applied to the note maturing on August 26th; that on August 25, 1874, Shoemaker deposited $93.10 in cash, which with the proceeds of the second note made up the amount of the first note to be taken up the day following; that the Tamaqua Rolling Mill Co. became insolvent about the time of maturity of the first note and the second note discounted was protested for non-payment on October 21st, and was never paid; that on the morning of August 26th, Shoemaker presented his check to withdraw the amount to his credit, and payment was refused. The bank admitted a balance of $6.32 applicable to the check of Mr. Shoemaker.

In plaintiff's rebuttal, Mr. Shoemaker admitted that he had deposited $93.10 on August 25th, but denied that that deposit with the proceeds of the second note was intended as sufficient to take up the first note. He also denied that he had agreed that the proceeds of the second note if discounted by the bank were to be applied to the first note.

The court after reviewing very carefully the testimony charged as follows:

[If you find that at the time the note was discounted, on the 18th August, 1874, it was discounted upon the express condition, or agreement, or understanding that the proceeds should be applied to the payment of the other Rolling Mill note which matured on the 26th August, 1874, and that Shoemaker in any way agreed or assented or acquiesced in the discounting upon such conditions, then we think you should find for the plaintiffs, only for the balance of the funds in the bank belonging to Shoemaker at the time that plaintiffs presented their check. Or, in other words, you could not include in your verdict the proceeds of the note discounted upon the 18th August, 1874, since by such agreement, these proceeds had previously been applied to another debt. If you find that there was no condition attached to the discounting of the note, by the consent or with the knowledge of Shoemaker, but

that it was discounted and placed to the credit of Shoemaker in his account without anything being said to him about any condition, or about its being discounted upon condition that the proceeds should be applied to the other Rolling Mill note, then the proceeds of the note became a credit to him in his account and was subject to an appropriation by his check, in the usual way and usual course of business; and if you further find that Shoemaker appropriated the funds in his account to the payment of a debt due to the plaintiffs by him; and gave the check to the plaintiffs for such purpose, and the plaintiffs presented the check at the bank upon the same day and prior to the appropriation of Shoemaker's account to any other debt due to the bank by Shoemaker, then we think the plaintiffs would be entitled to your verdict for the whole amount of the check.] [3] If you find for the plaintiffs, then upon whatever amount you find in their favor they would be entitled to interest from the 26th August, 1874, to this day. The first note discounted on the 23d June, 1874, (we are not sure that that was the date, but about that time,) was the note of the Rolling Mill Company, payable to the order of Shoemaker; and his, Shoemaker's, liability to pay this note became fixed only when he, in some way, received notice of the non-payment of the same by the makers, the Rolling Mill Company. It is not necessary that this notice should be made in the shape of a certificate of a notary. Any form of notice that conveyed to him, Shoemaker, the information that the maker had failed to pay the note, and that he would be looked to for the payment of the same, would be sufficient.

If you find that Shoemaker was notified of non-payment by the maker, on or prior to the 26th August, 1874, and before the plaintiffs presented their check, then we say the bank had a right after such notice, to charge the same to Shoemaker's account, and this without reference to whether or not any previous agreement had been made authorizing such charge of the note to his account, for this is but applying the doctrine of the right of set-off, which right the bank would have, if you find as above stated. If you find that there was no agreement that the proceeds of the note discounted August 18, 1874, should be applied to the payment of the first note, and also find that Shoemaker was not notified of the non-payment of

Charge of Court below.

the note maturing on the 26th August, 1874, until after the plaintiffs presented their check and demanded payment of the same, then we think the plaintiffs would be entitled to recover the full amount of their check and interest; for the defendant would have no right of set-off until after notice to the indorser, Shoemaker, of non-payment by the maker. We offer you no opinion as to what is or what is not proven. You are the judges of the facts, and you must find what the facts of this case are and then apply our instructions as to the law.

We have been requested to instruct you as follows on the part of the defendant : . . . . .

3. Where a note is payable in a bank, and the same bank is the holder of the paper, no actual demand is necessary upon the maker.

We affirm this ; for the maker is bound to provide for the payment of his note at the place which he himself has fixed for the payment thereof.

4. After notice to Shoemaker on the 26th August, 1874, of non payment, the bank had a right to charge up the said note to the account of said Shoemaker.

We will not say to you whether or not Shoemaker was notified of the non-payment of the first Rolling Mill note on the 26th August, 1874. You must find whether or not he was notified, and if he was, then when he was so notified. But if you find that he was so notified, and that he received such notice prior to the time that Mr. Shepp presented the check for payment, then we affirm this.[5]

5. Under all the evidence in the case the plaintiffs are not holders for value, and have no greater right to recover than would Shoemaker himself, who could not recover more than the balance of $6.23, with interest from the 26th August, 1874.

The plaintiffs paid no money to Shoemaker at the time they received the check; but if you find that Shoemaker gave the check, and the plaintiffs accepted it as a payment of the May bill then owing to the plaintiffs, by Shoemaker, then the plaintiffs were holders for a consideration; and as to the circumstances under which they may or may not recover, we refer you to that which we have heretofore said to you.

6. Under the undisputed evidence in the case, the discount of the 18th August, 1874, amounting to $392.14 was made by

Charge of Court below.

the bank upon condition that its proceeds should be applied to the payment of the note falling due the 26th August, 1874, and such proceeds could be applied to no other purpose but such payment; and if Shoemaker was unwilling to accept such terms when notified thereof, on the 18th or 26th August, 1874, his only right would have been to demand back the note of the 18th August, 1874.

To this we say: E. J. Fry and George Wiggand testify that the note discounted on the 18th August, 1874, was discounted upon condition that the proceeds should be applied to the payment of the note maturing on the 26th August, 1874. But whether or not Shoemaker was informed of this condition, or whether or not he assented or agreed to such condition, and application of the proceeds, we will not say to you. You must find what the evidence proves upon this subject just as you are required to find any other fact in the case. What the rule of law would be if you find that Shoemaker was informed of such conditional discount and assented thereto, and what it would be if you find he was not so notified or did not assent to such application of the proceeds of the note, we have heretofore stated to you, and we refer you to that which we have already said upon the subject as a further answer to this point.[4]

7. Under all the evidence in the case, there can be no greater verdict for the plaintiff than for $6.32 with interest from the 26th August, 1874.

We regard this as requesting binding instructions, and we cannot direct your verdict, under the view we have of this case. We therefore decline to so instruct you in view of that which we have heretofore said to you.[6]

Under this charge the jury found a verdict for the plaintiff for $761.61, whereupon the defendant took this writ, assigning for error:

1. The admission of the check in evidence.[1]

2. The allowance of the amendment as to the name of the plaintiff.[2]

3. The part of the charge embraced in [ ] [3]

4. The answer to the defendant's sixth point.[4]

5. The answer to the defendant's fourth point.[5]

6. The answer to the defendant's seventh point.[6]

*Mr. Guy E. Farquhar*, for the plaintiff in error :

1. To make a valid assignment of a chose in action, even in equity, two things must concur: (1) The assignor must by some significant act express his intention that the assignee shall have the debt or right assigned, and (2) the assignment must be of the whole debt: Palmer v. Merrill, 6 Cush. 282, (52 Amer. D. 782) ; Byles Bills, 17*. A check or draft without more is neither a legal nor an equitable assignment or appropriation of a corresponding amount of the drawer's funds in the hands of the drawee, and gives the payee no right of action against the drawee nor valid claim to the fund of the drawer in his hands: Harrisburg N. Bank's App., 10 W. N. 42. Therefore, it was surely error to add a new party to the record and proceed to try the rights, not of Shepp & Co., the payee, but of Shoemaker, the drawer, as if he had been an original party to the suit, especially as the statute of limitations could have been successfully pleaded to any suit brought by Shoemaker against the bank.

*Mr. S. K. Kaercher* (*Mr. H. B. Graff* with him), for the defendant in error :

1. Harrisburgh N. Bank's App., 10 W. N. 42, does not rule this case. In that case the check was not presented for payment until after a general assignment of the drawer for the benefit of creditors. Shepp & Co. accepted the check in payment of their bill against Shoemaker for the month of May ; the check was an equitable assignment or appropriation of its amount, and Shepp & Co. being a holder for value, Laber v. Steppacher, 103 Pa. 81 ; Stedman v. Carstairs, 97 Pa. 237, as to whom the drawer cannot rightfully revoke the power which he holds coupled with an interest, why should not the banker, upon distinct claim and notice, be held bound by the equity? Byles Bills, 15 n. If payment is demanded at noon on a check, which the depositor's unincumbered balance at that hour is sufficient to pay in full, the obligation of the bank to pay it in full is at once mature and perfect: Morse, Bank. 248 ; Saylor v. Bushong, 100 Pa. 23. In People's Bank v. Legrand, 103 Pa. 314, it was said : A bank deposit is different from any ordinary debt in this, that from its very nature it is constantly subject to the check of the depositor, and is always

payable on demand. The business of the commercial world, the enormous transactions by means of bank checks occurring on every business day in all parts of the country, require that the greatest facility should be afforded for the use of bank deposits by means of checks drawn against them. The contract to honor a depositor's orders is implied from the usual course of business: Morse, Bank. 35; Commercial N. Bank v. Henninger, 105 Pa. 496.

2. There was no error in permitting the amendment. It simply placed the proper parties on the record, for the trial of the cause on its merits. It did not change the cause of action or vary the testimony, and the defendant has no reason to complain: Cochran v. Arnold, 58 Pa. 399; Kaylor v. Shaffner, 24 Pa. 489; Richter v. Cummings, 60 Pa. 441; Patton v. Railway Co., 96 Pa. 171; Fritz v. Heyl, 93 Pa. 77; Shryock v. Basehore, 82 Pa. 159; Knapp v. Hartung, 73 Pa. 291. In the last case, a count substantially different from the declaration was allowed to be added, and the plea of the statute did not avail.

OPINION, MR. JUSTICE GREEN:

It has been repeatedly held that the holder of a bank check has no right of action on the check against the bank. Although there may be funds of the drawer sufficient to pay the check in the hands of the bank at the time of presentment and no other appropriation of them made, yet the bank may refuse payment without subjecting itself to a suit by the holder : Saylor v. Bushong, 12 W. N. 81; Northumberland Bank v. McMichael, 106 Pa. 460; Bank of the Republic v. Millard, 10 Wall. 152. In Harrisburg N. Bank's Appeal, 10 W. N. 41, we said that an ordinary bank check "is neither a legal nor an equitable assignment or appropriation of a corresponding amount of the drawer's funds in the hands of the drawee. It gives the payee no right of action against the drawee, nor any valid claim to the funds of the drawer in his hands." Of course if the bank has accepted the check in the hands of the holder it then becomes liable to pay and must respond in an action by the holder.

In the present case there was no acceptance of Shoemaker's check in favor of Shepp & Co. nor any acts done indicating an

intention to accept it. On the contrary payment was refused as soon as it was presented. The action was brought by Shepp & Co. in their own name only, in August, 1874. On the trial in November, 1885, the court permitted an amendment of the record by adding John A. Shoemaker to the use .of D. Shepp & Co., and a recovery was then had upon the theory that the cause of action was the same and it was simply adding the name of the legal plaintiff. But it is very clear that the cause of action is not the same in any point of view, and that John A. Shoemaker could not be the legal plaintiff in an action upon the check in suit. It is a check drawn by Shoemaker payable to the order of Shepp & Co., and hence the whole right of action upon it was vested in Shepp & Co. when accepted by the bank. Shoemaker could in no circumstances bring an action *upon the check* as an obligation payable to himself. He could sue the bank to recover damages for dishonoring his check, or he could bring an action of assumpsit to recover the amount of his deposit as for money had and received; but in no event could he maintain any action upon the check itself. In 2 Pars. Bills and Notes, 61, it is thus said: " One of the many reasons why the holder of a check, upon the refusal of the bank to pay it, having sufficient funds of the drawer therefor, cannot maintain an action against the bank, is the existence of such a right of action on the part of the drawer, who may sue the bank in tort for the wrong done, or in assumpsit for the breach of the implied contract to honor promptly the customer's checks. In such action nominal damages may be recovered though no actual damage be shown." The writer further states that the jury may give the plaintiff in such an action such reasonable damages as he may have sustained from the dishonor. It follows that adding Shoemaker's name as legal plaintiff conferred no additional right of action upon Shepp & Co. in relation to the check in suit.

As to Shoemaker's right of action to recover damages for the dishonor of his check, or specifically to recover his deposit, it was of course entirely different from any right of action possessed by Shepp & Co. either on the check or for any other cause, and hence the amendment could not properly be allowed. Either of Shoemaker's rights of action was subject to the bar of the statute of limitations several years before the amend-

ment was allowed; and, therefore, it was error to permit the amendment against the present defendant, who would thereby be deprived of the privilege of pleading the statute. An amendment to a declaration will not be allowed if a new cause of action is thereby introduced, especially where the new cause is so old as to have been barred by the statute of limitations: Wright v. Hart's Adm'r, 44 Pa. 454. See also Smith v. Smith, 45 Pa. 404 and Tyrrill v. Lamb, 96 Pa. 464.

The assignments of error are all sustained.

Judgment reversed.