# JOHN S. FURST, TO USE, v. BUILDING & L. ASS'N.

### ERROR TO THE COURT OF COMMON PLEAS OF CLINTON COUNTY.

Argued March 22, 1889—Decided October 7, 1889.

[To be reported.]

1. If, in a suit brought in the name of X, it becomes apparent that X has no right of. action in his own name, an amendment making P (the proper party to sue) the legal plaintiff and X the use plaintiff be applied for after P's right of action is barred by the statute of limitations, such amendment will not be allowed to affect defendant's right to plead the statute.

2. Upon an agreement to indemnify a mortgagor against liability upon a mortgage, the statute of limitations begins to run as soon as the mortgage debt becomes due, and, in an action brought thereon more than six years thereafter, the statute is a complete defence unless the evidence disclose something to take the case out of it.

(*a*) In an action by P to the use of X, a building association, brought December 12, 1885, against D., another association, upon an unsealed agreement, dated June 16, 1877, and given by D to P, by which D undertook to assume and indemnify P against a certain mortgage given by him to X, the following facts were shown in the plaintiff's case in chief :

(*b*) The last instalment of the mortgage matured September 30, 1878. On October 1, 1880, R, the secretary of both X and D, delivered to the solicitor of X, for collection, a check drawn by P, payable to "R, Sec. Building Ass'n," dated June 16, 1877, and the same day given by P to R as part of the consideration of the indemnifying paper received by him from D. This check was never presented for payment.

(*c*) About six weeks after its date, the bank on which the check was drawn became insolvent. On October 4, 1880, P collected from the receiver of the bank a dividend of $91.10 upon his deposit account, and paid the same over to X's solicitor on account of this check. On March 14, 1882, he made a like payment of $22.38 out of a similar dividend.

3. Upon these facts, the plaintiff was properly nonsuited, as the action was barred by the statute of limitations ; and, there being no evidence that R was authorized by the defendant to deliver the check to B.as a payment on account of the claim in suit, or that X ever so accepted it, there was no basis for an inference of a payment by the defendant within six years before suit brought.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 237 January Term 1889, Sup. Ct.; court below, No. 182 January Term 1886, C. P.

On December 12, 1885, the Mutual Saving Loan and Building Association of Clinton county, Pennsylvania, brought debt against the Building and Loan Association of Lock Haven, Pa., and on October 12, 1886, filed a narr declaring upon a written undertaking of the defendant to pay to the plaintiff the amount of a certain mortgage, and to indemnify John S. Furst, Robert H. Furst and Luther C. Furst against the same, setting out in the declaration a copy of said writing, which was as follows:

"LOCK HAVEN, PA., June 16, 1877.

"Received of J. S. Furst, transfer of judgment, Clinton County, No. 152 December Term 1874, of J. S. Furst v. Henry Sperring for $1,120, with $44.87 interest from October 30, 1876, to June 30, 1877, and $1.75 entry fee, making $1,166.62 and check $113.88, making in all $1,280.50 in payment of $1,300, balance of mortgage of J. S. Furst & Sons to the Mutual Saving, Loan and Building Association of Clinton County, Pa., in payments of $50 monthly, beginning August 31, 1876, and without interest till due, present value June 30, 1877, being $1,280.50; and it is agreed with the Building and Loan Association of Lock Haven, Pa., to whom the above has been transferred, that they will keep the said J. S. Furst & Sons harmless from and satisfy the within mentioned balance of mortgage at or before its maturity.

"(Signed) W. W. RANKIN, [Prest.]

"A. N. RAUB, Secretary."

The defendant's pleas were nil debet, payment, and the statute of limitations.

At the trial on March 7, 1887, the following facts were shown in the plaintiff's case in chief:

On October 31, 1874, John S. Furst recovered a judgment for $1,120 against Henry Sperring, which became a lien upon certain real estate of the defendant situated in Lock Haven. On April 7, 1875, the defendant in the present action, an association organized under the act of April 29, 1874, P. L. 73, made a loan of $1,000 to Henry Sperring, and took from him and put on record a mortgage upon said real estate as security

therefor; and, on July 7, 1875, took from him and placed on record a similar mortgage securing a further loan of $1,400. On May 8, 1877, the directors of the defendant association, being desirous of obtaining control of the prior lien held by John S. Furst, in order to prevent its enforcement to the prejudice of defendant's mortgages, passed a resolution of which the following entry was made upon the minutes: "On motion a committee, consisting of Messrs. Raub, Parsons and Schuyler, was empowered to settle with J. S. Furst on the Sperring claim."

On June 16, 1877, John S. Furst met A. N. Raub and William Parsons, Jr., two of the committee named in this resolution, and W. W. Rankin, president of defendant association, at Mr. Parsons' office. At this meeting an arrangement was agreed upon by which, instead of paying Furst for his judgment in cash, the association should assume the payment of a certain purchase money mortgage which he and his two sons, Robert H. Furst and Luther C. Furst, had given to the Mutual Saving, Loan and Building Association of Clinton county, and that Furst should assign to the defendant association his judgment against Sperring. This mortgage to the Mutual etc. Association bore date October 30, 1875, and was for the sum of $1,800, payable in monthly instalments of $50 each, without interest until maturity, the last of the instalments maturing September 30, 1878. A calculation having disclosed that the balance owing upon this mortgage exceeded the amount of the judgment against Sperring by $113.88, John S. Furst thereupon drew and delivered his check upon the Lock Haven National Bank for $113.88, payable to "A. N. Raub, Sec. Building Ass'n," and assigned said judgment to the defendant, and the paper of which a copy has been given, supra, was prepared, signed and delivered to him, on behalf of the association. About six weeks after the drawing of this check, the bank on which it was drawn suspended payment, and the check was never presented. A. N. Raub, to whom it was made payable, was the secretary of the plaintiff association as well as of the association defendant. Shortly before October, 1880, he delivered the check to Mr. Charles Corss, the solicitor of plaintiff, to collect for the plaintiff.

On October 4, 1880, John S. Furst, having received out of

the assets of the Lock Haven bank a dividend of $91.10, paid the same by direction of A. N. Raub, to Mr. Corss, who thereupon made on said check the following indorsement: "4th Oct., 1880, paid on the within, $91.10. [signed] Charles Corss, Solicitor for M. S., L. & B. Association." On March 14, 1882, another dividend was collected by John S. Furst from the receiver of the bank, out of which he paid over to Mr. Corss, by Raub's direction, $22.38. For this sum a credit was indorsed on said check, signed "C. Corss." The moneys so collected by Mr. Corss were paid over by him to the treasurer of the Mutual S., L. & B. Association. They were not indorsed as credits on the mortgage, and whether they were so formally applied on the association's books, did not appear. After the institution of this suit and before the trial, the Mutual etc. Association, being engaged in closing up its business, assigned the mortgage against John S. Furst and Sons to Charles Corss, in order to obviate delay in winding up. Mr. Corss testified that the moneys so received by the Mutual Association were a legal credit on the mortgage. Other material portions of his testimony are quoted in the opinion of the Supreme Court, infra.

The plaintiff having rested, the defendant's counsel, on March 8, 1887, moved for a compulsory nonsuit. Before the decision upon this motion, plaintiff's counsel moved to amend the record so that the plaintiff should be John S. Furst, for the use of the Mutual S., L. & B. Association, which amendment was allowed under objection and exception to the defendant. The motion for the judgment of compulsory nonsuit was then allowed, with leave, etc.

The motion to take off the judgment of nonsuit was subsequently overruled, the court, MAYER, P. J., delivering an opinion, in which it was held that under the evidence the plaintiff's claim was barred by the statute of limitations. Thereupon the plaintiff took this writ, assigning for error, the order entering the judgment of nonsuit and the refusal of the court to vacate said judgment.

*Mr. Charles Corss* and *Mr. C. G. Furst* (with them *Mr. J. R. Youngman*), for plaintiff in error:

1. The defendant was authorized by clause 8, § 37, act of April 29, 1874, P. L. 98, to purchase at judicial or other sale any real estate upon which it had a lien, and of necessity to pay or purchase any incumbrance thereon prior to its own. The purchase of the prior lien against Sperring's property held by John S. Furst, was within the express and implied powers of the board of directors and strictly within their line of business. It was manifestly to defendant's interest to purchase this lien upon the best terms possible, and the giving in payment therefor of this obligation, executed by the president and secretary under the direction of the committee who had full authority to settle with Furst, was an advantageous arrangement. In fact, the authority to give it was not seriously questioned on the trial, and the nonsuit was rested by the court solely upon the statute of limitations.

2. Plaintiff claims that the bar of the statute was prevented by the payment which the defendant, about October 1, 1880, made by delivering the check of John S. Furst for $113.88, to the solicitor and collecting officer of the plaintiff association. Plaintiff does not claim any effect upon the running of the statute from the two payments subsequently made on the check out of dividends collected from the bank, though the court seems to have understood that they were what we relied on to bar the statute. We rely entirely upon the fact that this check, which was the property of the defendant and was a thing of value, entitling the holder to receive at once from the bank a dividend of $91.10 already declared, was delivered on October 1, 1880, to the plaintiff as a payment on account.

3. On June 16, 1877, there was due on the mortgage, which defendant assumed, $400. The committee had full authority on that day, and it was their duty, under the agreement, to pay the plaintiff said $400, and they could have handed over Mr. Furst's check as a part payment thereof. It was only through the neglect of A. N. Raub, the member of the committee to whom the paper was intrusted, that this was not done at once. On October 1, 1880, the authority of the committee being still unrevoked, Raub, who was both a member of it and the secretary of defendant, handed over the check to the solicitor and collecting agent of the plaintiff association, which was in no way connected with defendant. We are therefore war-

ranted in saying that the payment was made by the defendant to the plaintiff. It was made on the debt in suit, which was the only debt due from defendant to plaintiff.

*Mr. W. C. Kress*, for defendant in error :

1. The claim was barred by the statute of limitations. More than six years elapsed between the maturity of the last instalment of the mortgage and the bringing of the suit. No payment on account was made by defendant. The check of John S. Furst was never delivered to the defendant by secretary Raub. He was secretary of both associations, and evidently held it for the Mutual etc. Association, as is shown by his afterwards handing it to the solicitor of that association without the direction or knowledge of defendant. Moreover, the making of payments was not within the scope of the secretary's authority. Again, the check was a mere worthless piece of paper, and no payment at all. It was never presented, although more than six weeks elapsed before the bank suspended. The drawer was therefore released and the bank never became liable : First N. Bank v. Shoemaker, 117 Pa. 94. Yet this worthless check is the sole reliance of plaintiff to toll the statute. Even this remarkable payment is claimed as of October 1, 1880, while the amendment bringing the plaintiff on the record was not asked for until March 8, 1887, which was too late : Kaul v. Lawrence, 73 Pa. 410 ; Trego v. Lewis, 58 Pa. 463 ; Kille v. Ege, 82 Pa. 102. No effect can be claimed by plaintiff from the two payments afterwards made, because they were not made by defendant, but by the plaintiff himself, on account of a mortgage for which he was liable. ·

2. There is no privity of contract between plaintiff association and defendant. The contract was for the benefit of the firm of John S. Furst & Sons. The agreement was to indemnify the latter and the declaration alleges a contract with them. Defendant should not be liable to two separate actions for the same debt : Blymire v. Boistle, 6 W. 184. The action should be in the name of John S. Furst & Sons, in whom the legal interest in the contract was vested : 1 Chitty on Plead., 2 ; Kountz v. Holthouse, 85 Pa. 235. But this contract was not within the scope of the powers granted by the act of 1874, and defendant's stockholders could not be bound by it : 2 Wait's

Act. & Def., 305; Dartmouth College v. Woodward, 4 Wheat. 518; Commonwealth v. Railroad Co., 27 Pa. 339; Susq. Boom Co. v. DuBois, 58 Pa. 182; Fowler v. Scully, 72 Pa. 456; Diligent Fire Co. v. Commonwealth, 75 Pa. 291; Pittsb. etc. R. Co. v. Allegheny Co., 79 Pa. 210; Stewart's App., 56 Pa. 413; Pittsb. & C. R. Co. v. Allegheny Co., 63 Pa. 126.   Even if the defendant had power to give this bond of indemnity, it never authorized its execution.   The vague minute offered in evidence gave no such power to the committee; nor was it proved that the committee ever met.   The paper does not purport to be the work of the committee; it is the unauthorized act of the president and secretary, by which the corporation was not bound: Nippenose Mfg. Co. v. Stadon, 68 Pa. 256; Ardesco Oil Co. v. Gilson, 63 Pa. 146; Allegheny Co. Workhouse v. Moore, 95 Pa. 408; Ang. & Ames on Corp., 239; 2 Wait's Act. & Def., 342; Twelfth St. Market Co. v. Jackson. 13 W. N. 320.

OPINION, MR. JUSTICE GREEN:

The contract upon which this suit is founded is an agreement in writing, but not under seal, the purport of which is, that the Building and Loan Association of Lock Haven, Pa., will keep J. S. Furst & Sons harmless from, and satisfy the balance of a mortgage given by J. S. Furst & Sons to the Mutual Saving, Loan & Building Association of Clinton County, Pa.   The writing, which is a receipt to J. S. Furst for a transferred judgment of Furst against Henry Sperring and a check of Furst for $113.88, concludes with a statement of the agreement to save harmless.   The agreement is between Furst and the Building & Loan Association exclusively.   The Mutual Saving etc. Association is no party to it, in any sense whatever. That association held, and thereafter continued to hold its mortgage against Furst & Sons, with which it did not part. The last money due on this mortgage matured on September 30, 1878.   The agreement in suit was made June 16, 1877. This action was brought December 12, 1885.   The cause of action, which was the non-payment of the mortgage by the defendant corporation, commenced on the first day of October, 1878, and when this action was brought on the agreement to save harmless, upwards of seven years had elapsed.   The stat-

ute of limitations was pleaded, and it was a perfectly good defence, unless there was something to take the case out of the operation of the statute. The only matter alleged to have this effect is a payment, which it is said was made on account in 1880. It is candidly admitted by the counsel for the plaintiff, that unless there was such payment they have no case, and the bar of the statute is a good defence. The learned court below was of opinion that no such payment was established, and therefore directed a nonsuit to be entered, and this is the error complained of. It is only necessary to investigate the facts regarding the alleged payment, in order to determine the question. Of course, if the defendant, recognizing its obligation under the contract in question, consciously and actually made a payment on account of it in 1880, the statute would not be a bar.

It is necessary to say that the suit was originally brought in the name of the Mutual Saving, Loan & Building Association alone. That corporation was the holder of the mortgage against Furst & Sons. As that company, however, was in no sense a party to the contract in suit, which was made only between J. S. Furst, individually, and the defendant corporation, it was soon perceived there could be no recovery in an action brought in its name. This being so, the counsel for the plaintiff, on March 8, 1887, applied for an amendment, by which the name of John S. Furst, for the use of the Mutual Saving, Loan & Building Association, was substituted as plaintiff for the name of the association alone. This amendment was allowed by the court below, but only after objection and exception by the defendant. It is difficult to see how this amendment could have helped the plaintiff's case, as the statute was a complete bar at the time it was made; and it is perfectly well settled that amendments will not be allowed when they deprive the opposite party of any rights: Kaul v. Lawrence, 73 Pa. 410; Trego v. Lewis, 58 Pa. 463; Kille v. Ege, 82 Pa. 102. But, as in our view of the case, there never was a payment sufficient to bar the statute, it is unnecessary to rest the decision upon that ground. The learned court below held, rightly as we think, that the introduction of Furst's name as plaintiff did not help the case.

In order to appreciate correctly the force of the facts relat-

ing to the alleged payment, it must be remembered that the
only real plaintiff in the case is John S. Furst.   It was upon a
contract with him alone that the action was based.   If the
payment was not a payment upon that cause of action, it was
not a payment which would bar the statute.   What then are
the facts in regard to the payment?   When the receipt was
given by the president of the defendant corporation to John S.
Furst, a judgment for $1,120 with $44.87 interest due thereon,
held by Furst against Henry Sperring, was transferred, and to
make up the balance of $1,280.50, which was taken as the
amount to be paid of the $1,300 due on the mortgage, John
S. Furst gave his personal check for $113.88, dated June 16,.
1877, on the Lock Haven National Bank in favor of " A. N.
Raub, Sec. Building Ass'n."   At the time the check was given
it was good, as Furst had an ample deposit with the bank to
meet it; but for some unexplained reason it was never pre-
sented for payment and was of course never accepted by the
bank, and hence the bank never became liable to pay it:   First
N. Bank v. Shoemaker, 117 Pa. 94.   The bank was located in
the same city where the payee lived and did business.   About
the last of July or first of August, 1877, being about six weeks
after the date of the check, the bank failed and went into the
hands of a receiver.   The check was never proved against the
bank, and consequently no dividend was ever awarded to it.
The legal status of the check therefore was, that it was a mere
worthless piece of paper.   The payee never could, and never
did maintain any action or proceeding of any kind upon it.
The drawer of the check, John S. Furst, had no right of action
upon it, of course, as it was his order to the bank to pay out
money to another:   First N. Bank v. Shoemaker, supra.

Furst, however, was a depositor in the bank and in that ca-
pacity he received a number of dividends upon the amount of
his deposit.   Being examined as a witness on the trial of this
case, he testified that on October 4, 1880, he paid to Charles
Corss, who was then the solicitor for the Mutual Saving, Loan
& Building Association, $91.10, and that on March 14, 1882,
he made another payment of $22.38 also to Mr. Corss.   He
further testified that he paid these sums on account of the
mortgage held by the association against Furst & Sons.   These
two payments are indorsed upon the check by Mr. Corss as

solicitor for the Mutual Saving, Loan & Building Association. Mr. Corss, being examined on the trial, testified that he was solicitor for the plaintiff corporation from 1876 or 1877 to the time of the trial; that he received the check from A. N. Raub; that A. N. Raub was secretary for the plaintiff corporation at the time he gave the witness the check, which was shortly before October 1, 1880, and being further examined testified as follows: " Q. Was that check given to you for the plaintiff? A. Yes, sir; given to me to collect for the plaintiff. Q. And those credits that are written on the back of the check, who gave you? A. Those payments were dividends declared by the receiver of the bank upon the deposit that John S. Furst had in the bank, and he received it for convenience and brought it to me instead of my proving the check against the bank. I allowed him to do that, receive the dividend in his own name, and pay it to me." It is only necessary to add that A. N. Raub, while he was secretary of the defendant corporation in 1877, when the check was given, was also secretary of the plaintiff corporation at all times from its organization, and in 1880, when he gave the check to Mr. Corss, the counsel for the plaintiff corporation, for collection. The undoubted facts, then, as established by the plaintiff on the trial, were that the two payments of October 4, 1880, and March 14, 1882, instead of being payments by the defendant, were payments made by John S. Furst himself, he being the plaintiff in the case, with his own money drawn directly by him from the receiver of the bank, who owed him the money as dividends on his deposit. Further, the payments were made to Mr. Corss, who held the check for collection, not from the defendant, but from the plaintiff corporation, who by its secretary had delivered the check to him for its own account. The payments were indorsed upon the check as being made upon it, not by any authority of the defendant, but by Corss acting as counsel for the plaintiff corporation. As a matter of course, if Mr. Corss had assumed to act on behalf of the defendant in making these entries, he could not possibly have charged the defendant with any responsibility for them, but he did not at all assume to act in that capacity. What he did was the act of the plaintiff, and of course it could have no legal effect as the act of the defendant.

In legal effect the entries were simply nugatory in any event. The check was absolutely worthless as such. J. S. Furst, as the drawer, might be responsible to a holder if it had been presented for payment in proper time and refused and had been duly protested. Or, he may have chosen to regard himself as liable morally for its payment and made the payments accordingly; but to speak of such payments made by him alone, voluntarily, and without a scrap of evidence that the defendant knew of the payments or authorized them to be made, as being payments made by the defendant, either upon the check or the mortgage, is simply impossible. There is no evidence to show that the check was ever delivered by the defendant corporation to the plaintiff corporation. It was delivered by A. N. Raub, who was secretary of both corporations, to Mr. Corss; but there is no evidence that Mr. Raub was ever authorized by the defendant corporation to deliver it to the plaintiff corporation, or that the latter ever accepted it for any purpose whatever, or even authorized Mr. Raub to deliver it to Mr. Corss. As it was an utterly worthless paper against anybody except possibly Furst himself, and then only in a contingency which has not been proved to exist, it is of no consequence what was done with it by Furst or Corss. Neither of them had any authority to bind the defendant by anything they might do or say in regard to it. It would be most extraordinary if the plaintiff Furst could be permitted to charge the defendant with the consequences of a payment made by himself voluntarily, but in discharge of his own obligation, as being a payment made actually, knowingly, and purposely by it in discharge or on account of an obligation of its own. Every element of a payment of the latter kind is absent from this case. The check was not an obligation of the defendant in any point of view. It was not payable to bearer or to order. There was nothing to show it was either indorsed or assigned by anybody or to anybody; the title to it would not pass by mere delivery: and, as before said, there is no proof that the defendant ever consented to any delivery of it to the plaintiff corporation. Further discussion of the subject is entirely unnecessary. In no conceivable point of view is it possible to regard the payments made by Furst in 1880 and 1882, as payments made by the defendant; and as there is not a particle of proof that the

defendant corporation ever delivered or authorized the delivery of the check to the plaintiff corporation, there is nothing upon which to base an inference of payment of anything by defendant to plaintiff, at any time within six years before suit brought.

Judgment affirmed.