## Bell, Receiver, v. Collins

*J. Julius Levy*, for plaintiff.
*David J. Reedy*, for defendant.

HOBAN, J., February 23, 1940.—On July 1, 1929, defendant executed a demand note to the Peoples Savings & Trust Company of Duryea, for $14,000, and deposited with the payee as collateral security for the payment of said note various shares of stock and the assignment of a certain trust fund held by the Scranton Lackawanna Trust Company of Scranton, trustee for Helen Collins, wife of defendant. The last payment made by defendant upon the note, either for principal or interest, was December 31, 1931. Suit was brought upon the balance due upon this note February 16, 1938.

On March 21, 1932, the Scranton Lackawanna Trust Company, as trustee for Helen Collins, paid the payee the sum of $787.50, which amount was credited toward the balance due on the note. This payment was made in consideration of a return of the assignment of the trust fund to the trust company for the benefit of Mrs. Collins, that is to say, it was a settlement of plaintiff's claim against the trust fund as collateral on the note. At various times thereafter until the date of suit, and even after suit was started, dividends were received and collected by the payee on the stocks deposited as collateral, and applied against the indebtedness. It will be noted that the payment of the amount to settle plaintiff's claim against the trust fund for Helen Collins, and various pay-

ments of dividends which were credited against the debt, occurred on dates within six years subsequent to December 31, 1931. But there is no evidence, unless the crediting of the amounts received from the Scranton Lackawanna Trust Company and the various dividends collected by the payee upon the collateral securities are so considered, that defendant Russell E. Collins paid any amounts personally upon the note, or directed or authorized anyone to make such payments on his behalf.

On the foregoing state of facts, on defendant's motion, a compulsory nonsuit was entered and the matter is now before us on a motion to take off.

We are of the opinion that the case is directly ruled by the decision in Dick et al. v. Daylight Garage, Inc., et al., 335 Pa. 224. In that case one of the notes in controversy was signed by the corporation defendant and deposited with it as collateral were certain mortgages. Suit was brought after the statutory period had run against the debt, but the evidence showed that certain payments were made by the mortgagors on the mortgages given as collateral, which payments were credited against the note. The court, speaking through Mr. Justice Maxey, said:

"There was no evidence whatsoever to connect the garage company with these payments, and it did nothing acknowledging its continued liability. 'A payment to toll the Statute of Limitations, must be made or authorized by the debtor: *Wesner v. Stein & Greenawalt*, 97 Pa. 322; *Furst v. B. & L. Assn.*, 128 Pa. 183, 18 A. 341; *Watts et al. v. Devor*, 1 Grant 267': *White v. Pittsburgh Vein Coal Co.*, 266 Pa. 145, 149, 109 A. 873."

Plaintiff, however, in its argument on the rule to take off the nonsuit, contends that the case is not ruled by Dick et al. v. Daylight Garage, Inc., et al., supra, for the reason that the payments credited upon the note, as result of the liquidation of collateral and the collection of dividends by the payee, must be held to toll the statute. Plaintiff's theory is that when defendant deposited the

various items of collateral with payee, it created the payee, and its successors, defendant's agents to do all such acts as might be necessary at any time in connection with the collateral, either by way of liquidation, collection of interest or dividends, and subject only to payee's duty to see that the moneys so realized were applied to the reduction or liquidation of the original debt. This theory has received some support. See Bosler et al., Execs., v. McShane, 78 Neb. 86, 110 N. W. 726, 113 N. W. 998, 12 L. R. A. (N. S.) 1032, and Krupnick v. Peoples State Bank of South Carolina et al., 25 Fed. Supp. 857 (D. C. S. Carolina).

In the Nebraska case this absolute agency theory was upheld under the peculiar language of the Nebraska statute, and the Federal district court case just cited rests largely on the authority of the decision in the Nebraska case.

There is also a line of cases in Massachusetts which seems to indicate that the application of collateral, occurring after the period of limitations has run upon the principal obligation, is a payment which removes the bar of the statute. See Buffinton et al. v. Chase, 152 Mass. 534, and Vermont-Peoples National Bank v. Parker, 269 Mass. 387, 169 N. E. 154. But these cases recognize that a different rule obtains in other States.

Even if the payee in the instant case could be considered an agent of defendant for the collection of dividends and the application of proceeds of the collateral, its authority as such agent must have come from the assignment and deposit of the collateral, and such authority was irrevocable. The act of an agent operating under an irrevocable authority cannot be considered a voluntary act on the part of the debtor, or any admission on his part of the validity of the debt and a promise to pay. See A. L. I., Restatement of Contracts, §86, sub-sec. 2(b), and the discussion and illustration thereunder.

Plaintiff further argues that the retention by defendant of certain receipts made out by the payee and mailed

to defendant, which receipts contained notice of amounts received by the payee, either by liquidation of the claim against the trust account above mentioned or receipt of certain dividends, created some sort of a new contract between payee and defendant. This is based on the theory that the retention of such receipts, without protest, evidenced defendant's consent and approval of the application of such money to the debt, from which a promise to pay might be inferred. If we could give credence to any such theory, we would have to decide contra to Dick et al. v. Daylight Garage, Inc., et al., supra, but we do not believe that the theory has any justification generally or as applied to this particular case. Generally speaking, one can visualize the absurd results possible if all that were necessary to toll the statute of limitations would be for a creditor to write out a receipt for some small payment, send it to a debtor, and require him thereupon to make a positive affirmation or denial of the existence of the debt. One can only do this by way of a lawsuit.

In this particular case it would be absurd to require that defendant on September 8, 1933, when there came to his house a receipt for $3.20, being the dividend on five shares of the First National Bank of Scranton stock, make a formal protest that he had not personally paid that money to the holder of the note, or that he did not wish it applied to the debt in question. From the evidence it is clear, no matter what the receipt said, that the amount in question was received directly by the payee of the note as a dividend on the shares deposited as collateral, and that the payment did not pass through the hands of defendant. It would be futile to require defendant to affirm or dissent from the application of the money, since he had no control over it. The case might be different if the authority of the bank to receive and apply dividends were one which might have been revoked at will by defendant, but, as pointed out above, the authority, even if considered that of an agent, was irrevocable.

Plaintiff also argues that since these formal receipts, sent to defendant by payee, at the time when they were made were admissions against the financial interest of the payee, they should be accepted as evidence of the truth of all statements contained therein, even though at the time of their introduction into evidence they were then to be considered in favor of the payee's interest rather than against it. The analogy is used of the debit and credit entries in the books of account of a creditor seeking to recover from a debtor. What plaintiff hopes to prove from this contention is that the first line to be read in these receipts, to wit, "Received of Russell E. Collins . . .", is to be taken as evidence that Russell E. Collins actually made the payments in question. But we do not think, even if these documents were admitted in evidence for the purpose intended, that such an inference of fact could be taken from them, when considered with the other evidence in the case, to wit, the evidence of defendant himself called as for cross-examination, and the evidence of the witness, Joseph A. Bedner, deputy receiver of the closed banks in Luzerne County, whose testimony was to the effect that the collection of dividends was made directly by the payee institution or its receiver.

Furthermore, the offer of proof as to the settlement of the claim against the assigned trust account of Helen Collins shows that demand or the payment of the amount due thereon was made by plaintiff upon the Scranton Lackawanna Trust Company, and not upon defendant, and that the payment of the sum of $787.50, for which a subsequent receipt was issued to Russell E. Collins, was made not by defendant but by the Scranton Lackawanna Trust Company. The offer of such proof was rejected at the time on the ground that it was irrelevant, since it did not tend to prove a payment made by Collins or at his direction or authority. But if the receipt is now to be admitted for the purpose of indicating that the payment was actually made by Russell E. Collins, then the offer of proof as to the payment by the trust company to the

creditor would have to be received, which would then flatly contradict the tenor of the receipt now offered. We are convinced that there was no error in refusing to allow the receipts in question to be used in evidence, except for the purpose of indicating the amount actually credited to the reduction of the obligation.

For the foregoing reasons we are of the opinion that nothing has been shown that would take the case out of the rule of Dick et al. v. Daylight Garage, Inc., et al. supra, and that the compulsory nonsuit was properly entered.

Now, February 23, 1940, the rule to show cause why the compulsory nonsuit should not be taken off and a new trial awarded, is discharged.