## Trego *et al. versus* Lewis.

1. A declaration charged that the contract had been made in Pennsylvania: the whole transaction was in Virginia. An amendment laying the contract as having been made in Virginia was formal and proper.

2. The court will not permit a plaintiff to change or enlarge his ground by an entirely new and different cause of action, especially when by the Statute of Limitations, or an award of arbitrators, it would work an injury to the opposite party.

3. Amendments which tend to advance the interests of justice are proper and necessary, and should always be allowed.

4. Where the damages found are greater than the amount laid, the declaration might be amended in the court below, and the amendment will be permitted in the Supreme Court when the case is there on error.

5. Where jurisdiction depends upon the sum demanded, as before justices of the peace, jurisdiction will not be ousted by the recovery of a greater sum where it is made up by interest accrued after suit brought.

6. Letters and acts of one of two parties charged jointly, admitted as tending together to show a joint liability, although no one singly might have been evidence.

7. Former joint transactions are evidence on the question of joint liability, in an action on a subsequent contract.

May 11th 1868. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. STRONG and READ, JJ., absent.

Error to the Court of Common Pleas of *Cumberland county:* To May Term 1868, No. 23.

[*Trego v. Lewis.*]

This was an action of assumpsit, brought May 12th 1859, by James Lewis against Levi Trego and A. P. Henderson.

The declaration was filed October 5th 1860, and contained all the common counts, with the ordinary venue " Cumberland county ss."

As filed, the first count laid the contract " on the —— day of ——, in the year one thousand eight hundred and —, at the county aforesaid."

The other counts were the same, except laying the contract " on the day and year last aforesaid."

The damages were laid at $1000.

The defendants pleaded " non assumpserunt."

On the 21st of August 1867, the court, against the objection of the defendants, allowed the declaration to be amended by filling the blank with " 1st September 1859," and inserting in each count before " at the county aforesaid," the words " in the county of Frederick and state of Virginia, to wit."

The claim was for 115 hogs, which the plaintiff alleged he had bought for the defendants, and for feed which he furnished whilst they were in his care.

The plaintiff gave evidence that the defendants were in Virginia with the plaintiff weighing hogs together, which had been purchased from sundry persons; that they received hogs from plaintiff at the scales after the hogs were weighed; that they deposited money in the Bank of Winchester, Virginia, to the credit of plaintiff, in the fall of 1856; that they had a draft drawn by them and endorsed by plaintiff discounted at that bank, and the proceeds passed to their credit; they said the proceeds were to be used in the purchase mainly of hogs.

Clark, a witness for plaintiff, testified: He had seen defendants at plaintiff's in 1856 and 1857, buying hogs. In December 1857, plaintiff told him to drive the hogs to Trego and Henderson, who were to meet him near Hagerstown. Witness drove 142 hogs, and near Hagerstown met Trego, who engaged him to deliver the hogs at Chambersburg, gave witness $500 for plaintiff, and told him to tell plaintiff to make out the bill for corn while he had the hogs on hand, and he would send all the money together when he had sold the hogs.

Ewing, another witness, had been employed in September 1857, by defendants to drive hogs from plaintiff's to Carlisle; plaintiff and defendants went with witness on the road, and Trego asked plaintiff to look for more hogs; that he would pay 6¼ cents per pound as long as hogs were 9 cents per pound.

A number of letters from January 22d to December 10th 1857, inclusive, some signed " Levi Trego," and some " Trego & Henderson," all in the handwriting of Trego, were received in evidence against the objection of the defendants, and bills of exception sealed.

[Trego v. Lewis.]

The letters speak of hogs being sold, of wanting more at a time named; that Henderson would bring money; that if plaintiff got any hogs they would try to deal with him, and that he should not buy for any one else; that if he could get hogs they would come when they heard from him; that he should engage all the hogs he could, &c. A letter of October 15th 1857, signed by Trego, directed plaintiff not to buy any hogs, and hoped he had not any engaged; of October 20th, signed by Trego, expressed disappointment that plaintiff had bought hogs, and said he had told him not to buy till he should hear from him.

Plaintiff gave evidence that Henderson and Trego had hogs, and had been dealing in hogs together about 1856, 1857 and 1858.

The defendants gave in evidence a number of letters from the plaintiff to Trego. In one dated February 13th 1858, he says: "I received your note of the 10th instant, with Smyser & Wilts's note enclosed, and sent back, stating that you could not get it discounted. I will send it on for collection," &c.

They then offered the note referred to in the letter, to be followed with the record and declaration in a suit to November Term 1859, by Lewis against Trego, on the note, for the purpose of showing that the plaintiff was not dealing with Henderson and Trego jointly.

The offer was rejected, and a bill of exceptions sealed.

The plaintiff asked the court to charge :—

2. It devolves upon the defendants to show that the hogs sent by Lewis in December 1857 were not received by Trego, for Trego & Henderson, and on the terms offered to Lewis in the letters from them, and as detailed by Mr. Ewing. Where parties have dealt with another jointly and on the pledge to him of their joint credit, they must show when that course of dealing ceased, and what new arrangement was made in its place.

The court (Graham, P. J.) answered. "If the authority from defendants to plaintiff to purchase hogs for them was general and continuing, then we answer this point in the affirmative. But if it was limited, and given to purchase particular lots only, then the plaintiff must show a joint authority from defendants to purchase the hogs in controversy to entitle him to recover."

The defendants submitted a number of points. Those, the answers to which were assigned for error, with the answers, are as follows :—

1. There can be no recovery by the plaintiff in this action unless the plaintiff has satisfied the jury that this particular lot of hogs was purchased by both Henderson and Trego, and that they assumed a joint liability.

The court said :—

8 P. F. Smith—30

[Trego *v.* Lewis.]

" We answer this in the affirmative, unless the evidence satisfies you that there was a continuing authority from defendants to plaintiff to purchase hogs for them which had not been countermanded."

2. As this suit is not against the defendants as copartners, but as co-contractors in a single transaction for the hogs sent to Pennsylvania in December 1857, evidence of purchase of hogs by defendants from the plaintiff at any former time, and of what defendants or either of them then said or wrote in regard to the transactions then on hand, is not admissible to fix any joint liability on defendants for the hogs which were sent in December 1857 ; and all testimony which was admitted of that kind should be dismissed from their consideration by the jury.

Answer : " We cannot answer this as requested. You will consider all the evidence in determining the joint liability of defendants in this cause."

3. The declarations of Trego at the house of the plaintiff, on the porch, and when Mr. Henderson was in the house, as detailed by witness Ewing, and the letters signed Trego & Henderson, in the handwriting of Trego, are not evidence against Henderson, and can only affect Trego, by whom the declarations were made and the letters written. And the direction of Lewis to Clark, that he was to drive the hogs to Trego and Henderson, and that Trego and Henderson were to meet him near Hagerstown, are not evidence to affect Henderson, as he was not present, and it was not communicated to him.

Answer : " The conversations of Trego in the absence of Henderson, and the letters written by Trego, are not evidence to affect Henderson, unless sanctioned and approved by Henderson, nor are conversations of plaintiff in the absence of Henderson evidence against Henderson."

5. The counts in the declaration as amended were objected to at the time they were asked to be amended; and they were amended after the Statute of Limitation would bar any other action, and against the consent of defendants, and there can be no recovery on them.

" We cannot answer this as requested. The court did permit the declaration to be amended as stated. But no new cause of action has been introduced, no transaction between the parties has been shown except the alleged purchase and sale of these hogs, which, it appears, was made in Virginia and not in Pennsylvania."

6. If the plaintiff seeks to recover on the evidence that when Henderson and Trego were in Virginia, in September 1857, Trego said that he and Henderson would pay $6\frac{1}{4}$ cents per pound, as long as pork was at 9 cents per pound, and that Lewis should go on and look out for more hogs, and that in pursuance of this agree-

[Trego v. Lewis.]

ment, plaintiff did go on and purchase and deliver hogs in December 1857, the plaintiff cannot recover in this action.

Answer: "We do not understand that the plaintiff seeks to recover on any particular isolated item of evidence, but on all the evidence in the case, tending to show a joint authority from defendants to purchase hogs for them and a delivery of the hogs to Trego, as the plaintiff alleges, for Trego and Henderson. If there was authority from defendants jointly to purchase these hogs and they were purchased in pursuance of such authority, and delivered to Trego, one of the purchasers, and there was no subsequent understanding or agreement between the plaintiff and Trego, that Trego alone was to pay for them or sell them for the plaintiff, then the plaintiff may recover. But if the evidence fails to satisfy you that the hogs were purchased in pursuance of a joint authority from defendants, then the plaintiff cannot recover. We have before said that the amendments of the declaration, permitted by the court, will not prevent a recovery."

The verdict was for the plaintiff for $1132.84, for which judgment was entered.

The defendants sued out a writ of error, and assigned for error:

1. The amendment to the declaration.

2 and 3. Admitting the letters in evidence.

4. Rejecting the defendants' offer.

5. The answer to the plaintiff's second point.

6, 7, 8, 9 and 10. The answers to the defendants' points.

11. Entering judgment for damages beyond the amount laid in the declaration.

*W. H. Miller* and *Henderson & Hays*, for plaintiffs in error, discussed the errors under these heads:—

1. The amendment of the declaration.

2. Admission and rejection of evidence.

3. Liability of Henderson.

4. Entering judgment for more than the damages laid.

On the first head they cited Root v. O'Neill, 12 Harris 326; Gardner v. Post, 7 Wright 19; Farmers' and M. Bank v. Israel, 6 S. & R. 293; Coxe v. Tilghman, 1 Whart. 287; Yost v. Eby, 11 Harris 331; Wright v. Hart, 8 Wright 454; Smith v. Smith, 9 Id. 403; Steffy v. Carpenter, 1 Id. 44.

On the second head, they cited: Evidence admitted, Schoneman v. Fegeley, 7 Barr 433; Rowan v. Rowan, 5 Casey 181; Porter v. Wilson, 1 Harris 641, 1 Greenlf. on Ev. § 174, 177; Hauberger v. Root, 6 W. & S. 435; Johnson v. Warden, 3 Watts 101; Com. v. Eberle, 3 S. & R. 9; Harris v. Wilson, 7 Wendell 57; McClurg v. Willard, 5 Watts 275; Hannay v. Stewart, 6 Id. 487; Switland v. Holgate, 8 Id. 385; Ingham v. Crary, 1 Penna. Rep.

389; Sheafer *v.* Kreitzer, 6 Binn. 432; Nash *v.* Gilkeson, 5 S. & R. 352.

On the third head they cited McCready *v.* Freedly, 3 Rawle 251; Evans *v.* Mengel, 6 Watts 72; Jones *v.* Mengel, 1 Barr 68.

On the fourth head, Siltzell *v.* Michael, 3 W. & S. 329; Lantz *v.* Frey, 7 Harris 366.

*A. B. Sharpe* and *W. M. Penrose*, for defendant in error, cited, as to amendment, 1 Chitty's Pl. 258, note k; 267, 268, 270; Mostyn *v.* Fabrigas, Cowper 176; Shoenberger *v.* Hackman, 1 Wright 92; Roop *v.* Roop, 11 Casey 59; Ward *v.* Ward, Id., in note; Wampler *v.* Shissler, 1 W. & S. 365; Miller *v.* Weeks, 10 Harris 89; Sauerman *v.* Weckerly, 17 S. & R. 116; Ins. Co. *v.* Seitz, 4 W. & S. 273; Smith *v.* Latour, 6 Harris 243; Chaffee *v.* Sangston, 10 Watts 265.

As to the evidence, Welsh *v.* Speakman, 8 W. & S. 260; Wolle *v.* Brown, 4 Whart. 367; Allen *v.* Rostain, 11 S. & R. 372; Wood *v.* Connell, 2 Whart. 553; Anderson *v.* Levan, 1 W. & S. 338; 1 Greenlf. Ev., § 177; Hauberger *v.* Root, Shollenberger *v.* Seldenridge, Comm'th. *v.* Eberle, *supra*; Spence *v.* Spence, 4 Watts 167; King *v.* Hardwick, 11 East 578; Butcher *v.* Green, Douglass 652; Bowers *v.* Sill, 13 Wright 65; Potter *v.* McCoy, 2 Casey 462; McIntyre *v.* Kennedy, 5 Jd. 448; Shaw *v.* Presb. Church, 3 Wright 226.

Liability of Henderson: Hastings *v.* Eckley, 8 Barr 194; Newbold *v.* Shelton, 4 Rawle 195; Martin *v.* Hammon, 8 Barr 272; Dougherty *v.* Stephenson, 8 Harris 210; McCready *v.* Freedly, 3 Rawle 251.

Entering judgment: Gratz *v.* Phillips, 5 Binn. 572; Prevost *v.* Nicholls, 4 Yeates 479; Furry *v.* Stone, 2 Dall. 184; s. c., 1 Yeates 186; School in L. Dublin *v.* Paul, 1 Binn. 60; Paul *v.* Harden, 9 S. & R. 23; Spackman *v.* Byers, 6 Id. 385; Wampler *v.* Shissler, 1 W. & S. 365; Peddle *v.* Hollinshead, 9 S. & R. 277; Jamieson *v.* Pomeroy, 9 Barr 230; Miller *v.* Weeks, 10 Harris 89; Ward *v.* Stevenson, 3 Id. 21; Hughes *v.* Hughes, 4 P. F. Smith 244; Graham *v.* Bickham, 4 Dall. 149; Robeson *v.* Whitesides, 16 S. & R. 320; Burr *v.* Todd, 5 Wright 206; Chitty on Cont. 768; Jarman *v.* Coape, 13 East 393; 2 Pars. on Cont. 158; Shoenberger *v.* Harkman, *supra*; Keen *v.* Hopkins, 12 Wright 445; Robinson *v.* English, 10 Casey 324; Smith *v.* Latour, 6 Harris 243; Stuart *v.* Blum, 4 Casey 225; Hobensack *v.* Hallman, 5 Harris 154; Sergeant *v.* Ewing, 6 Casey 75.

The opinion of the court was delivered, May 20th 1868, by

AGNEW, J.—Many errors have been assigned in this case, but we discover none possessing any weight. As the plaintiff in error has discussed them in classes, we may follow the same path. The

[Trego v. Lewis.]

amendment of the declaration permitting the promises to be laid as made in Virginia, adding the proper *videlicet* to bring the action within the jurisdiction of the court, was not erroneous. The action was brought to recover the price of the hogs purchased in Virginia. All the evidence and the history of the case show conclusively that Lewis, who was a farmer living in Frederick county, Virginia, had his transactions with the defendants there. There is not even a pretence that the cause of action arose in Pennsylvania. Now that the omission of the pleader to state the formal averment that the contract was made in Virginia, should close the door against an amendment of this merest form, would be a stigma upon the administration of justice. Undoubtedly the court will never permit a party to shift his ground or enlarge its surface by introducing an entirely new and different cause of action, especially when by reason of the Statute of Limitations, or an award of arbitrators, or for some good reason, it would work an injury to the opposite party. But amendments which tend only to advance the interests of justice are not only proper, but necessary, and should always be allowed. In this connection we will also dispose of the last error alleged in entering a judgment on a verdict for a sum greater than the damages laid in the declaration. The declaration was clearly amendable in the court below, and the entry of judgment was merely an oversight. The action was brought in 1859, and in consequence of the suspension of intercourse between Virginia and Pennsylvania, by the war of rebellion, was not tried until 1867. The damages were laid in $1000, and the verdict was recovered for $1132.84, the excess being a sum much below the interest which had accrued on the demand in the mean time. The sum recovered, exclusive of the interest, therefore, was less than the damages laid in the declaration at the time it was filed. In cases where even jurisdiction depends on the sum demanded, as in an appeal from a justice of the peace, the jurisdiction is not ousted by the recovery of a greater sum where the excess is merely the interest accrued after suit brought. The plaintiff had the right to amend in the court below, and this being the case we will permit it to be done here. The authorities cited by the defendant in error clearly justify this exercise of our discretion. Some *dicta* have been cited that the court will reverse for this cause. Where the justice of the case demands it, we might perhaps decline to permit it after the party had slipped his opportunity. But the legislature has led the way to the making of amendments of the most vital character, altering names Christian and surname, changing and adding names of parties, and even striking out parties where too many have been included. It becomes us to keep pace with legislative reform instead of lagging in its rear. Nothing is a matter of more form than the sum inserted at the conclusion of a *narr.* as the damages suffered. We

[Trego *v.* Lewis.]

therefore will allow the amendment which would have been of course in the court below.

We think the court below was right in receiving in evidence the letters and acts of Trego, one of the defendants. It is not always in the power of the party to give direct evidence of the joint acts of parties charged jointly. He may follow each by his separate steps, until he is able to bring them together, and show that they are in company with each other, and acting concurrently. Often the most complete chain of evidence binding parties together, is forged of separate links, and to refuse to weld them together by means of proof would frustrate justice. The rejection of the suit brought on the note endorsed by Trego did the defendants no injury. It was not alleged that this evidence tended to show payment, and the endorsement being upon the note of a third party to Trego individually, was necessarily the separate act of Trego. It did not therefore of itself sever the relation of Trego and Henderson in the purchase of the hogs.

We think there was abundant evidence of the joint relation between Trego and Henderson in purchasing the hogs, to carry the case to the jury. The argument of the plaintiff in error that because a man may be jointly concerned in five transactions, and yet not in the sixth, therefore the prior purchases of the plaintiff by both the defendants in 1856 and 1857 were no evidence of their joint relation in the last purchase in 1857, is not convincing. It is true that standing alone these former transactions might be insufficient to secure a verdict, but connected with the other evidence they constituted a strong circumstance in the cause. A man's ordinary course of dealing is often resorted to and relied on in the proof of liability. Thus where one is in the habit of sending a servant to take up goods, it is held to be proof where some of the goods are not shown to have been taken up, by direct proof of his order. Both parties were together in their last visit to Virginia in September, and started for home with a drove of hogs. Lewis accompanied them a part of the way, and Trego and Henderson were sitting on their horses in the road talking to Lewis of purchasing hogs. Trego told Lewis to go on and look out for more hogs. Lewis went on and bought hogs to the number of 142 in the same fall, and in December drove them into Pennsylvania to Trego. These are the hogs for which the claim was made in the suit. Clearly this justified submitting the case to the jury on all the evidence.

Finding no error in the record, the judgment is affirmed.