## J. W. Grier, C. E. Grier and J. C. Grier, trading as Grier Brothers, *v.* Northern Assurance Company, Appellant.

[Marked to be reported.]

*Practice, C. P.—Amendment—Res adjudicata.*

The allowance of an amendment of a statement of claim is not such res adjudicata as will prevent the defendant from objecting to the enforcement of the amendment, if it appears that it was improperly allowed.

*Amendment—Statute of limitations.*

A new cause of action cannot be introduced, or new parties brought in, or a new subject-matter presented, or a fatal and material defect in the pleadings be corrected, after the statute of limitations has become a bar.

*Amendment—Statute of limitations—Policy of insurance—New promise.*

A promise by an insurance company to pay the amount of a policy, notwithstanding a previous denial of all liability, while a new undertaking not contained in the policy, cannot be separated from the policy, or from its terms and stipulations, but must be enforced, if enforced at all, with a full reference to the original contract itself, and to its fundamental and indispensable conditions; and such a promise cannot be introduced by amendment in a case against the insurance company, after the time limit for bringing suit prescribed by the policy has expired.

A policy of fire insurance provided that suit should be commenced within twelve months next after the fire. In an action upon the policy the defendant filed an affidavit of defense alleging that the plaintiffs had violated one of the conditions of the policy by keeping prohibited articles on the premises insured. More than a year after the fire the plaintiffs were allowed to file an amended statement in which they averred that after the fire the defendant company had at first denied all liability, but subsequently orally agreed to pay the loss. At the trial, the plaintiffs proceeded upon the amended statement. The defendant contended that there could be no recovery, because the amendment was not made until after the limitation upon the right of action had closed. *Held*, (1) that the allowance of the amendment was not res adjudicata as to the right of allowing it; (2) that plaintiffs could not recover on the amended statement.

*Insurance—Fire insurance—Parol waiver.*

A parol agreement by an insurance company to pay a loss, notwithstanding the fact that the insured had violated one of the express conditions of the policy, must be established by evidence which is clear, precise and indubitable.

Argued April 19, 1897.   Appeal, No. 322, Jan. T., 1896, by defendant, from judgment of C. P. Clearfield Co., Sept. T., 1894, No. 355, on verdict for plaintiffs.   Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ.   Reversed.

Assumpsit upon a policy of fire insurance.   Before SAVIDGE, P. J., of the 8th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[Now, speaking of the case against the Northern Assurance Company, directing your attention just for the moment to that and to this particular question of the withdrawal of the power of this agent to make settlement for them, which power had been in the beginning lodged with him, I say that in my judgment the correspondence between the parties, which appears to be the only evidence on the question, shows a withdrawal of the power to make settlement by that company.   If you find that he informed the insured, Grier Brothers, that he did represent that company, and had power to make settlement for them at a time when he in fact did represent them, and did in fact have that power, any settlement thereafter made by him for the company, in adjustment of this claim, would be binding upon the company, unless Grier Brothers knew that his power to make that settlement had been canceled by the company or withdrawn from him. So that, if you find that he afterwards did make settlement with Grier Brothers for the Northern Assurance Company, and that Grier Brothers did not know that he had no longer the right to make this settlement for them, did not know this power had been withdrawn, that settlement would be binding upon the company, and the company would have to stand by it.] [7]   Much that I have said with regard to this case applies as well to the other cases against the Armenia Insurance Company ; the evidence as to the withdrawal of his authority to represent that company rests in parol.   Mr. Kuester testified that when he communi-

cated with them, and informed them of the fact that he had discovered that dynamite and explosives had been kept on the premises, and therefore the policies had been vitiated, they directed him to make no settlement; they informed him the case could not be adjusted and settled; that they would make defense to the claim on the ground that it had been vitiated; the policies had been vitiated by the act of the assured. Well, if the company did that (and that is a matter for you to determine), if they so informed the agent, and instructed him he should not settle, and took away the right for him to make these settlements, (and you say under the evidence of the case whether that is so or not, remembering, however, that there is no testimony to the contrary, and that Mr. Kuester swears that they did so instruct him) if they did that,—this company did that,— he no longer had the right and power to settle for them, and any settlement made by him with Grier Brothers would not be binding upon the company, provided Grier Brothers knew of this withdrawal of the right to make settlement. If they settled with him in good faith, believing that he still had authority to represent the company, and had not been informed to the contrary, the settlement would be binding upon the company. Where a principal lodges with an agent authority to do a certain thing, to act within a certain scope, and that principal deals with a third party as agent under such authority, with information to the party of his agency, which in fact existed at the time the information was given, if the authority be afterwards withdrawn, and notice of that withdrawal be not brought home to such third party, the agent still continues to deal for his principal, and what he does will bind that principal. Now, I think you understand clearly that question; that is the law of the question. With the facts I have nothing whatever to do; those are wholly for you. Jurors deal with facts and determine the questions arising therefrom, and settle them according to the weight of the testimony, taking the law applicable to those facts from the court. I am responsible for the law, you are responsible for the facts. You are bound to take the law as given to you by the court, and with the facts it is not my purpose to interfere, as indeed I have no right.

These suits you will understand, probably have from the beginning understood, are not brought upon the original contract;

that is, they are not claiming upon the policies of insurance, Grier Brothers are not. Were they so claiming, the fact, if it appeared to your satisfaction, that dynamite had been kept upon the premises, or powder in quantities prohibited, would defeat their claim; the policies formed the contract between the parties, and both parties were bound by their terms. When people make contracts they must live up to the terms of those contracts. Those contracts constitute the law as between them, and if in any material matters they fail to perform the terms of their contracts, and vitiate and avoid them, such contracts as these in question, there could be no recovery thereon. So that were these suits upon the original contracts, upon the policies of insurance, the fact, if it be a fact, and I don't understand it is seriously contended it is not a fact, the fact that dynamite was kept upon the premises would prevent their recovery; and if the cases were in that shape I would be obliged to say to you, as a matter of law, there could be no recovery. But these actions are not upon the contracts; they are not upon the policies; but are brought upon an alleged subsequent agreement; an alleged agreement of settlement. Now, the companies had full power to waive the conditions and terms of those contracts, and notwithstanding there may have been powder and dynamite and explosives kept on the premises, the companies had the right to say, when a loss occurred, we will overlook the breach of contract on the part of the assured; we will waive our right to contest these cases or these claims, because of the fact that the assured had violated the contracts, and voided them by keeping explosives and powder upon the premises; we will overlook that, and we will settle and pay the claims notwithstanding. [That is what is contended by the plaintiffs was done in this case, in these cases; that this insurance agent, this adjusting agent, agreed to a settlement of the claims, and thereby there was a waiver of the right to take advantage of the forfeiture of the contracts or policies, or alleged forfeiture of the contracts and policies by Grier Bros. You are to determine under all the evidence in the case whether this settlement took place as contended, having first determined what authority or right or power this agent (Kuester) had to make the settlement, and if the authority or power had been withdrawn, (as it was in the Northern Assurance case, and as it probably had been in the

others) whether that was made known to Grier Bros.; if the authority had been withdrawn, and Grier Bros. knew it, then any settlement or pretended settlement he made would not be binding upon the company. But if he made such settlement, as contended for by the plaintiffs, and Grier Bros. were not informed, and did not know that he had no authority to make it on behalf of the company, then, as I have said to you two or three times, the settlement would be binding upon the defendant, and the plaintiffs ought to recover according to its terms.] [10] So you see it is a very important question, as important as any other in this case, and one which will no doubt give you considerable concern, and which you may have some difficulty in determining, namely, whether there was a settlement; did a settlement take place between this agent and Grier Bros.? That most, if not all, the other companies settled is a conceded fact in the case. There were negotiations on or about the 3d, 4th or 5th of April, or during those days, looking towards settlement of this loss; the negotiations were had between several adjusting agents, representing various companies having policies upon the building and stock and machinery.

[It is contended by the plaintiffs that they were unwilling to settle any of the claims, unless all were settled; that they were unwilling to run the risk of lawsuits with one party and settle with another for, as they contend, less than the legitimate claim they had against the insurance companies, and they claim that they refused to make settlement with any unless there was settlement made with all, and they say that Kuester consented to and did settle for the companies he represented, including the Armenia and the Northern of London. You remember the Northern policy was upon the building, $2,000, and one of the Armenia policies was upon the building for $1,000, and the other was upon the goods for $1,000. It is claimed that the settlement of the policy or of the loss upon the goods was fixed at sixty-six and two thirds per cent of the amount of the face of the policy, and that the settlement of the other claims on the other two policies was effected at face value of the policies.] [13]

[Did Kuester agree to a settlement of those claims? Was it understood when he left in April that the claims were adjusted and settled? Did the minds of the parties come together? Did he understand it, and did they understand it? Was there

an understanding between them that these policies were to be paid according to the terms of the contract, as the plaintiffs claim it to have been made. If so, then the company is bound to pay; they have waived their rights by that contract made through their agent to contest these claims on account of the vitiation of the policies by the acts or alleged acts of the insured.] [11]

I don't know that there is any other questions to which I need call your attention. [You will determine the questions of fact submitted to you from the weight of the testimony, and it is not always true that the weight of the testimony is with the side producing the largest number of witnesses. You have seen the witnesses upon the stand, and heard their testimony, and noted their manner, and you must determine their credibility.] [12]

Defendant's point and answer thereto among others were as follows:

Under the pleadings and evidence there can be no recovery, and the verdict must be for the defendant, because of the change in the cause of action introduced by the amended statements of plaintiffs, which have been excepted to, and upon which the suits have been tried. *Answer:* This point is refused. This question was determined by the court on the application for leave to file the amended statements, and we look upon it as res adjudicata. [1]

Plaintiffs' point and answer thereto among others were as follows:

That if they believe from the evidence in the cause that H. M. Kuester was acting for the defendant company, in the matter of the fire loss suffered by the plaintiffs, and with the other adjusters settled the loss on the policies as claimed by the plaintiffs, in April, 1894, that then the plaintiffs are entitled to recover. That this settlement, if made as claimed by the plaintiffs, is a complete waiver of any or all defense the company might otherwise have set up, and their verdict should be for the amount of the policy, with interest from April 5, 1894. *Answer:* To which I answer, affirmed, provided you find Mr. Kuester acted with authority from the defendant company. [8]

Verdict and judgment for plaintiffs for $2,000. Defendant appealed.

*Errors assigned* were among others (2) allowance of amendment of statement; (1, 7, 8, 10–13) above instructions, quoting them.

*Thomas H. Murray,* with him *Thomas A. Davies* and *Allison O. Smith,* for appellant.—The plaintiffs were not entitled, over eighteen months "after the fire," to file their amended statement on which they elected to proceed to trial, and to recover on it: Bossler v. Johns, 2 P. & W. 331; Gesell's App., 84 Pa. 240; Druckenmiller v. Young, 27 Pa. 97; Wright v. Hart, 44 Pa. 454; Tatham v. Ramey, 82 Pa. 130; Kaul v. Lawrence, 73 Pa. 410; Leeds v. Lockwood, 84 Pa. 70; Smith v. Smith, 45 Pa. 403; Fairchild v. Dunbar Furnace Co., 128 Pa. 485.

H. M. Kuester had no such authority as bound this company to the alleged settlement: Bouvier's Law Dict. 82, Adjustment; Mitchell v. Ins. Co., 51 Pa. 402; Bard v. Ins. Co., 153 Pa. 261; Pioneer Mfg. Co. v. Phœnix Assurance Co., 106 N. C. 28; Clement's Dig. 261, pl. 92; Everett v. London Ins. Co., 142 Pa. 332; First Nat. Bank v. Wirebach, 106 Pa. 47; Stitt v. Huidekopers, 17 Wall. 385; Inland Ins. Co. v. Stauffer, 33 Pa. 397; Com. Ins. Co. v. Sennett, 41 Pa. 164; Penna. Ins. Co. v. Dougherty, 102 Pa. 571; Leb. Mut. Co. v. Erb, 112 Pa. 160; Gould v. Ins. Co., 134 Pa. 588; Welsh v. London Assn. Co., 151 Pa. 618; Trask v. Ins. Co., 29 Pa. 198; Imp. Ins. Co. v. Dunham, 117 Pa. 473; Bard v. Penna. Mut. Life Co., 153 Pa. 257; Waynesboro Ins. Co. v. Conover, 98 Pa. 384; Flannery Bros. v. Ins. Co., 175 Pa. 387.

There was no such clear preponderating testimony of the alleged settlement, as against the imperative conditions of the policy requiring such stipulation to be in writing, and indorsed on the policy, as authorized the submission of this question to the jury: Rowand v. Finney, 96 Pa. 192; Schroedel v. Humboldt Fire Ins. Co., 158 Pa. 459; McFarland v. Ins. Co., 134 Pa. 590; Universal Ins. Co. v. Weiss, 106 Pa. 26; Nat. Ins. Co. v. Brown, 128 Pa. 391; Hocking v. Ins. Co., 130 Pa. 179.

*David L. Krebs,* with him *A. L. Cole* and *Wm. Paterson,* for appellees.—The authorities cited by appellant substantially all involve the statute of limitations as applicable to the new form of action, and they are not authorities for anything else.

Amendments to the pleadings are allowable at any time during the trial, if the ends of justice will thereby be promoted, and this must be left in a great measure to the discretion of the court: Stewart v. Kelly, 16 Pa. 160; Hellings v. Wright, 14 Pa. 373.

It is substantially admitted that if the contract of adjustment was made as claimed by the plaintiffs that the defendant is liable; hence we cite but a single case on that point: McGonigle v. Ins. Co., 167 Pa. 364.

OPINION BY MR. JUSTICE GREEN, January 3, 1898:

The plaintiffs' original statement of their cause of action was filed July 9, 1894, and set forth a policy of fire insurance made January 16, 1893, on a building, for $2,000, a subsequent loss by fire, and a consequent liability to pay the loss on the part of the defendant company, and a refusal to pay. The defendant filed an affidavit of defense July 31, 1894, alleging that the plaintiffs had violated one of the conditions of the policy by keeping prohibited articles on the premises insured. On July 29, 1895, and before the trial of the cause, the plaintiffs asked and obtained leave to file an amended statement of their cause of action, and the same was accordingly filed on August 1, 1895, after objection and exception on the part of defendant. On the trial of the cause the plaintiffs elected to proceed upon the amended statement, and the cause was tried upon that pleading. The objection to the application to file an amended statement was that it introduced a new cause of action, and could not be allowed, because by the terms of the policy no suit or action could be brought for the recovery of any claim until full compliance by the insured with all the preceding requirements of the policy, nor unless commenced within twelve months next after the fire. It was contended for the defendant that there could be no recovery by the plaintiffs because the amendment was not made until after the limitation upon the right of action had closed. A point to that effect was submitted by the defendant but was refused by the court, and this refusal is one of the errors assigned.

As we regard this ruling as very material to the plaintiffs' right of recovery, it becomes necessary to examine critically the amended statement of cause of action, in order to determine

whether it can be sustained. It opens with a statement of the policy, describing its terms and the contract of insurance thereby made between the parties. It then sets forth the destruction of the building insured by fire on January 11, 1894, and the consequent loss to the plaintiffs of $7,000. It then sets out other insurance to the amount of $17,000 on stock contained in the building, and other insurance on the building amounting, with the insurance in this policy, to an aggregate of $5,000, designating the present policy as "No. 10155, being the policy upon which this action is brought." The amended statement then further alleges that after the fire a dispute arose with the defendant and all the other companies as to the plaintiffs' right to recover the insurance money, "the defendant companies denying all liability, alleging that prohibited articles, to wit: gunpowder and dynamite were kept on the premises in violation of the terms of the said several policies;" that after several visits were made by the adjuster of the defendant and other companies for the purpose of adjusting the loss and arriving at a settlement, and after fully investigating the facts connected with the dispute, finally, on April 7, 1894, the defendant company, by its adjuster, and the representatives of the other companies, agreed to settle and adjust the loss under the several policies, and did settle and adjust the same, by agreeing to pay 66 2/3 per cent of the face of the policies on the merchandise insured, and by paying in full the loss on the building. The amended statement further adds, that the defendant company agreed to pay the full sum of $2,000 on the policy in suit, which they subsequently refused to pay, and therefore the plaintiffs brought the present suit and claimed to recover the sum of $2,000 with interest from April 7, 1894.

The important question arises, can such an amendment be made or, if allowed, can it be enforced against the objection of the defendant, after the expiration of the time for commencing an action on the policy? The learned court below refused the first point of the defendant on this subject, because the amendment had been allowed and was therefore res adjudicata. It is very clear that if the amendment was improperly allowed, it gained no strength because of its allowance, and therefore the question was still an open one, whether there could be any recovery notwithstanding the amendment had been granted. The answer

to the point was therefore erroneous unless the amendment was properly granted and a right of recovery arose under it.

The doctrine that a new cause of action cannot be introduced, or new parties brought in, or a new subject-matter presented, or a fatal and material defect in the pleadings be corrected, after the statute of limitations has become a bar, is so familiar to the profession, and has been declared by this Court, and by the courts of last resort of many other states of the Union, so frequently, that an extended review of the authorities is quite unnecessary. It cannot be essential to do more than determine whether this case comes within the line of the very numerous decisions on this subject.

A point has been suggested by the learned counsel for the appellees that because the action must now be regarded as being founded upon the agreement to settle, and not upon the policy, and there is no prohibition of such an action in the policy, the limitation of the policy is not applicable, and hence there could be no valid objection to the allowance of the amendment. We are very clear that this contention cannot be sustained, for manifest reasons. While the alleged undertaking is new it is neither independent of, nor separated from, the original cause of action. The policy of insurance still remains as the foundation of the action. The plaintiffs' claim would have no force, in fact no legal existence, without the policy, and there could not possibly be any recovery without the maintenance and enforcement of the liability thereby created. If there was no contract of insurance there was nothing upon which to found a liability to pay anything whatever, and the alleged promise to pay by reason of the settlement necessarily is built upon, and grows out of, the contract liability created by the policy. It is an agreement, and it must necessarily be an agreement, to determine what amount of liability exists under the policy. The essential foundation of any liability is the obligation imposed by the contract of insurance. And it is nothing else than this.

The plaintiffs claim to recover $2,000 insurance money because the defendant contracted to pay that amount by an executed contract of insurance. The defendant, not denying the contract or the relation thereby created, says the plaintiffs cannot recover on the contract, because they fatally violated its conditions. The plaintiffs reply that the defendants, neverthe-

less, promised to pay, after knowledge of the breach. While this is a new undertaking not contained in the policy, it cannot be separated from the policy or from its terms and stipulations, but must be enforced, if enforced at all, with a full reference to the original contract itself, and to its fundamental and indispensable conditions. Thus there must have been a preceding contract of insurance, its terms must have been specifically defined, the amount to be paid must have been fixed, the loss must have been incurred, and the relations must have been ascertained and defined just as closely and accurately in order to enforce the alleged new undertaking as to enforce the original contract itself. It follows that the policy is indissolubly connected with the new engagement, and must be regarded as a part and parcel of the entire liability which the plaintiffs propose to enforce. Hence we find that it is set out in the amended statement, and forms a necessary part thereof, as well as in the original statement. But the undisputed facts of the case are such as to prevent a recovery under the original statement, and the learned court below so instructed the jury, and very properly. The evidence of the violation of the express terms of the policy was overwhelming, and was not in the least degree contradicted, and the plaintiffs' showed their appreciation of this situation by abandoning the original statement and proceeding alone upon the amended one. Under this statement a new and additional engagement is averred, upon which it is claimed a right of recovery can be enforced. This alone characterizes the new engagement as vital to a recovery. Its materiality therefore cannot be questioned. Without it there can be no recovery. But this new engagement is only brought within the cognizance of the court and jury by means of an amendment. It was never asserted at any earlier stage of the proceedings. If no action had been brought upon the policy until the time when the amendment was asked for, as a matter of course, an action then brought would have been barred by the limitation of the contract. How then can a right of action be created by an amendment, which could not have been enforced by an original action, then brought for the first time? It is impossible. In the sense of the new engagement being a new cause of action, it is only in legal life when it is proposed. But it is proposed too late. A right of the defendant to plead the bar of the con-

tract is taken away if the amendment is to prevail, and under all the authorities, as will be presently seen, such a right cannot be taken away by means of an amendment. If the original statement had contained the new engagement, precisely as it now appears in the amended statement, there could have been no recovery, if the action had not been commenced until the time the amendment was made. Hence it follows that as an amendment, it can have no more force than it could have had if embraced in the original statement.

Out of the great mass of decisions to be found in the reports of this and other states upon this subject, a few only need be selected to illustrate the foregoing principles. In Dearie and Wife v. Martin, 78 Pa. 55, a claim was filed against a husband and wife without setting forth the coverture. The property belonged to the wife and the lien was defective in not setting forth the coverture. The Court said, "If the claim on which the scire facias issued was radically defective, it was no lien on the wife's property, and the defect was not cured by the replication to her plea of coverture. The replication cannot be treated as an amendment of the claim and, if it could be, it was too late to amend after the statutory period allowed for filing the claim. If the claim was fatally defective it was as powerless to continue the lien for which the law provides as if it had never been filed." In Wright v. Hart, 44 Pa. 454, LOWRIE, C. J., said, "It is admitted that the plaintiff below could not amend his declaration so as to introduce a new cause of action; and this is especially true where the new cause is so old as to be barred by the statute of limitations." In Smith v. Smith, 45 Pa. 403, the Court said, "We can not sustain the mode in which the case was tried. It was error to allow the plaintiff to add a new count for another slander or for a different cause of action after the right of action for that had been barred by the statute of limitations." In Trego v. Lewis, 58 Pa. 463, it was said, "Undoubtedly the Court will never permit a party to shift his ground or enlarge its surface by introducing a new and different cause of action, especially when by reason of the statute of limitations, or an award of arbitrators, or for some good reason, it would work an injury to the opposite party." In Kaul v. Lawrence, 73 Pa. 410, the Court said, "The legislature has gone far to prevent the loss of a trial and delay by amend-

ments even to the form of the action, and the courts have seconded the effort to reach the merits of the cases and prevent a failure of justice through technicalities. . . . . In doing this it is our duty, however, to see that amendments are not made in a manner to deprive the opposite party of any valuable right." In Kille v. Ege, 82 Pa. 102, it was said: "Amendments depriving the opposite party of any valuable right shall not be allowed; hence when the name of a person was added as plaintiff in ejectment after suit brought, it was held that if at the time of the amendment the title of the new party was barred by the statute of limitations he could not recover. . . . . It follows therefore that although the defendants in error were substituted without objection, yet they thereby acquired no rights relating back of their substitution. As to them the action commenced when their names were put on the record."

The principle of this case is directly applicable to the present contention. At the time when the amendment was asked for, to wit: July 25, 1895, there was no right of action of any kind for the loss, under the express terms of the policy. The grant of the amendment did not, and could not, give to the plaintiffs a right of action earlier than that date, but on that date all right of action to recover under that policy was gone, and it could not be restored by means of an amendment. To permit a recovery in such circumstances would be to deprive the defendant of a valuable right already vested, which will not be permitted. In Tyrrill v. Lamb, 96 Pa. 464, which was an action of covenant upon written articles for the sale of land, which was sought to be changed to assumpsit by amendment (an allowable amendment under our act of May 10, 1871, Purd. 100), Mr. Justice MERCUR, delivering the opinion, said, "It was too late to commence and maintain a new action based on the alleged agreement with Martin. The right of the defendants to interpose a plea of the statute of limitations was to them valuable. This amendment could not deprive them of that right. The form of action having been changed does not prevent us from declaring now its effect." In Furst v. Building, etc., Association, 128 Pa. 183, we said, " This amendment (a change of name) was allowed by the court below, but only after objection and exception by the defendant. It is difficult to see how this amendment could have helped the plaintiff's case, as

the statute was a complete bar at the time it was made, and it is perfectly well settled that amendments will not be allowed when they deprive the opposite party of any rights."

Applying the principle to this case its relevancy will be directly seen. At the time the amendment was proposed there was no right of action on the policy for the recovery of the loss, because it was especially so contracted by the parties as a part of the policy. The right of the defendant to plead this defense against any proposed amendment that might be offered could not be taken away by that means, and hence the amendment could not be sustained. The alleged promise to pay was made on April 7, 1894, and therefore was more than twelve months old when the amendment was applied for. Its purpose was to confer a right to recover under the policy. But no action to recover the loss sustained under the policy could at that time be maintained, and hence no amendment which sought to create such a right could be allowed. The alleged promise to pay was itself barred as a cause of action, being insufficient to that end, because of the express prohibition of the contract. The promise cannot be separated from the thing promised, and as the thing promised by the policy was the payment of money for a loss by fire, a promise to pay that money is a thing forbidden as a cause of action unless an action is brought to enforce it within twelve months from the date of the policy, or, if regarded in the sense most favorable to the plaintiffs, twelve months from the time the promise was made. This amendment cannot abide either of these tests, and hence it cannot be permitted to have any effect as against the defendant. In Knox v. Hilty, 118 Pa. 430, we reaffirmed all our previous decisions in this class of cases, and applied the same doctrine, and for the same reason, to a scire facias on a mechanic's lien issued against a husband for work and labor done upon a house. After judgment against the husband and execution issued, the court below permitted an amendment to be made striking off the judgment, introducing the wife as a defendant upon an allegation that she was the real owner of the property, and amending the claim of lien by introducing her name therein as owner in place of her husband's. A judgment having been recovered against the wife the case was removed to this Court and was promptly reversed by us without a venire. We said " On September 8, 1885, when the

amendment was made, eight months had expired from the completion of the building. It is needless to argue that at that time no valid lien could have been filed against the wife, the statutory period of six months for filing liens having fully expired."

It was contended that under our Act of June 11, 1879, P. L. 122, amendments were expressly allowed in mechanics' lien cases, by adding the names of other parties to conduce to justice and a fair trial on the merits, but we said, " There is nothing in this act which in the least degree gives sanction to the idea that the time for filing a lien may be extended beyond the six months, by way of amendment, or that any person may be thus introduced against whom no right to file a lien existed when the amendment was made. If the legislature had any such purpose in view they certainly would have said so."

The fundamental principle of the decision was that after the time limited for bringing an action had expired, no amendment would be permitted against any one, which would allow a recovery on the lien. Just so here. When the amendment was asked for, all right of action to recover the loss insured against by this policy was gone, because such was the agreement of the parties. The amendment proposed to introduce a new cause of action, by averring a promise to pay notwithstanding the violation of the policy and its consequent avoidance. In Knox v. Hilty, it was the introduction of another party against whom the lien was good, in this case it was the introduction of another promise by the defendant, but the promise was then more than twelve months old and could not be a cause of action on account of the prohibition of the contract. Hence the amendment was too late and should not have been allowed.

A contrary decision has recently been made by the Court of Errors and Appeals of New Jersey, 36 Atl. Rep. 1034, American Brick & Tile Co. v. Drinkhouse, in a mechanic's lien case. Entertaining, as we do, the highest respect for the learning and ability of that Court, we are constrained to say that in our opinion the decision was in direct hostility with all the decisions of this Court in similar circumstances and upon the same question, and we therefore cannot regard it as of any authority. It is also equally hostile to all the decisions of the courts of last resort in many of the states. A fatal defect existed in the plaintiff's

claim of lien, because it did not conform to the statutory requirements, and that was so held by the Supreme Court of the state. An amendment was then asked for, long after the bar of the statute had closed on the claim, and it was allowed. The allowance was sustained because, as we understand the opinion, defects in dates could be supplied by amendment for the reason that the original dates " were sufficiently explicit for all practical purposes," and it was too clear to require discussion that " such a change is embraced within the terms of a statute authorizing amendments 'in matter of substance as well as in matters of form.' " As the Supreme Court had previously decided that the defects in dates were so material that there could be no recovery on the lien, it is not easy to perceive the force of the reason assigned for disregarding the necessary legal consequence of absolute invalidity. The learned court also held that, as the statute allowed amendments to be made at any time, before judgment, the amendment in question could be sustained, although at the time of its allowance no action could have been maintained upon the lien in its original condition, and the consequence of the amendment was to deprive the defendant of the right to plead the statute. If an amendment must be sustained because it is applied for at any time before judgment, the distinction between good and bad amendments would be abrogated if only the time requirement is observed. The objection to the amendment was on its merits. The plaintiff by his own dereliction in not conforming to the statutory requirements had failed to bring his claim within the operation of the mechanic's lien law, and therefore he never had any lien. He had no lien, and therefore he had no right of action, either when the lien was filed, or when the amendment was asked for. If the amendment was allowed he was for the first time clothed with a right of action, at a time when the statute was a peremptory bar to any action, and it is not possible to cite a solitary authority holding that this could be done. It took away a valuable right which had already vested fully in the defendant, to wit: the right to plead the statute, and every authority that can be found decides that this cannot be done by means of an amendment. To this contention there is no answer in the opinion, the point is not even stated. The remark that the authorities cited were not pertinent cannot satisfy the inquiring mind. The doctrine

of the case is of course the law in New Jersey, but we could not possibly permit such doctrine to obtain any lodgment in our system of jurisprudence.

The decisions in the other states are so numerous that a review of them is not essential, but a reference to one or two which seem to be more particularly analogous will be instructive. Thus in Crofford v. Cothran & Niel, 2 Sneed (Tenn.), 492, the action was assumpsit upon two due bills without seal, dated June 1, 1847, and due from date. The statute of limitations had been pleaded, the plaintiff, at July term, 1853, asked leave to amend by changing the form of action to debt which was granted. At the time the amendment was granted the form of action as amended was barred by the statute, more than six years having then elapsed. The court below held that the amendment related back to the commencement of the action which was within the statutory period. The Supreme Court reversed that decision, holding that although the proposition was generally true it was not so where opposing rights had accrued before the amendment, and that the right to plead the statute having accrued before the amendment was granted it was a bar to the action which the amendment did not remove. The Court said, " We are not to suppose that the legislature in providing a method whereby one party might be relieved in some degree against the consequences of his own ignorance or negligence, intended to deprive the other party of the benefit of any legal defense, the right to which had become perfect and absolute before the time of the application for such amendment. . . . It may be conceded in general, and for most purposes the amendment will relate back to the day on which the original process was sued out; but this fiction of relation will not be allowed to obtain where it would work injustice to the adversary party by destroying or taking from him the benefit of an existing legal defense to the action. In a case, therefore, where the time of the commencement of the action may become important in reference to the statute of limitations or other matter of defense, the effect of an amendment changing the form of action must be restricted to the time when from the record it appears to have been granted. From that time only can, in such case, the plaintiff be regarded as rectus in curia."

The foregoing opinion is a most precise statement of the true

reasoning that pertains to the subject. The amendment proposed was a mere change in the technical form of action and, of course, would have been allowed if made in time. But when the statute had become a bar, it was because of that fact, it was for that reason, that the amendment could not be granted. It deprived the defendant of a valuable right which had become vested, and for that reason could not be allowed. It is of no consequence, and it is no answer, to show that the amendment was a proper one, and authorized by the statute of amendments. That is not the point in dispute. The real question is, can such an amendment be granted after the bar of the statute of limitations has closed on the claim? This was the vice in the New Jersey case, supra. The learned judge delivering the opinion proceeded to show that the amendment was proper to be made under their statute of amendments, and argued that such an amendment would do no injustice to the defendant because it simply added the dates of delivery of the materials and work, and that by implication from the words of the statute the lien, if filed in time, was only gone if there was a wilful or fraudulent misstatement of the matters required to be inserted. All this may have been true, but it had no application to the real point in issue, which was, that although the original claim of lien was filed in time yet, being fatally defective, it conferred no right of action, and that while such a right of action might have been conferred if the amendment had been asked before the statute of limitations had closed on it, it could not be done after that event. That was the real contention, but it was not considered. The reasoning was, that because the statute did not invalidate the lien by express words on account of defective statements, the defects might be remedied by amendment at any time. But it is not by force of any statute that amendments out of time are rejected, but by the common law principle that it ought not to be done after an adverse right had accrued. It was because the claim of lien was in its very inception fatally defective in that it never complied with a certain statutory requirement, and hence never had a legal existence. And so in the present case, if the amendment had been applied for while the right of action was running it might properly have been granted, but after the right of action had ceased under the contract it could not be done. Because there could be no recovery on the policy alone, the right to recover could not be created by

an amendment which was not solicited until after the right to recover for the loss was barred by the contract of the parties. Other cases affirming the same principles are First Nat. Bank v. Shoemaker, 117 Pa. 94; Flatley v. Railroad, 9 Heiskell 230; Willink v. Renwick, 22 Wend. 608; Cogdell v. Exrs., 69 N. C. 464; Shaw v. Cock, 78 N. Y. 194; Jeffers v. Cook, 58 Cal. 147; Seibs v. Engelhardt, 78 Ala. 508; Miller v. McIntyre, 6 Pet. 61; Long v. Judge, 27 Mich. 164; People v. Judge, 27 Mich. 138; Hills v. Ludwig, 46 Ohio, 373; Judson v. Courier Co., 25 Fed. Rep. 705; 15 Am. & Eng. Ency. of Law, 178; O'Neill v. Hurst, 11 Phila. 171. Numerous other cases hold the same doctrine.

Upon the whole case we are of opinion that the amendment, not having been asked for, or made, until after the bar of the contract had closed on the claim, should not have been allowed. As our views upon this subject are fatal to the plaintiff's claim it is not necessary to consider the other assignments of error in detail. We may however add that a careful reading of the testimony satisfies us that there was an entire insufficiency in the character and amount of the testimony to defeat the express provisions of the policy as to the alleged promise to pay the loss on the buildings. It was all in parol; it consisted of alleged verbal declarations of the agent Kuester, which he positively and emphatically denied; it was neither clear, precise nor indubitable; it depended almost entirely upon the testimony of the plaintiffs; it was contradicted by the testimony of a number of disinterested witnesses, and it was of a vague, indefinite and uncertain character. The authorities that upon such testimony express provisions in policies of insurance prohibiting parol waivers cannot be avoided are very clear and emphatic: McFarland v. Ins. Co., 134 Pa. 590; Universal Ins. Co. v. Weiss, 106 Pa. 26; Nat. Ins. Co. v. Brown, 128 Pa. 391; Hocking v. Ins. Co., 130 Pa. 179. There was no proof of an actual, distinct and definite agreement on the part of Kuester that the loss on the building should be paid. The argument in support of the plaintiff's contention on this subject is made out largely of inferences and implications from facts and declarations, most of which are disputed. This is not enough. We sustain the first, second, seventh, eighth, tenth, eleventh, twelfth and thirteenth assignments.

Judgment reversed.