## Best *v.* Safeguard Insurance Company of New York, Appellant.

Argued April 17, 1935. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Leonard L. Ewing,* of *Reed & Ewing,* with him *J. M. Stoner & Sons,* for appellant.

*Thompson Bradshaw,* of *May & Bradshaw,* for appellee.

OPINION BY KELLER, P. J., July 18, 1935:

Action of assumpsit on a policy of fire insurance covering household goods. The court directed a verdict in favor of the plaintiff for $1363.40.

The facts, as they appear in evidence from the relevant parts of the pleadings, offered and admitted, and from the testimony, may be stated as follows:

The household goods of the plaintiff, while contained in a dwelling rented by her from Charles Camarata, were on April 12, 1932, destroyed or seriously damaged by fire. She had two policies of insurance on them, one for $3000 in the defendant company and one for $2000 in Northern Assurance Company, Ltd. On April 19, 1932 W. W. Zieg, an adjuster employed by the insurance companies, called to see the plaintiff for the purpose of adjusting the loss. He first inquired if she was the sole and unconditional owner of the goods at the time of the fire, and upon being told by her, and by her attorney, that she was, he proceeded to negotiate for a settlement and adjustment of the loss. His inquiry as to her ownership of the goods was not alone the routine inquiry which he usually made, but had also been prompted by some information he had received of a constable's sale of the goods for rent a short time before. The adjuster, acting for the insurance companies made his appraisement or estimate of the loss; the plaintiff, hers. After some negotiation the parties finally agreed by way of compromise on an adjusted loss or damage of $2038.12, of which $1222.87 was payable by this defendant and $815.25 by Northern Assurance Co. and which sums, the adjuster agreed on their behalf to pay her. The adjuster prepared proofs of loss in accordance with said adjustment, which were signed by the plaintiff and sent to the respective insur-

ance companies on April 22, 1932. The companies retained them until June 14, 1932, when they were returned to plaintiff with the notation that it had come to their knowledge, since the meeting with their adjuster on April 19, 1932, that plaintiff was not at the time of the fire the sole and unconditional owner of the goods alleged to have been damaged and therefore the offer of settlement was revoked, and the proofs of loss were rejected and the companies refused to pay anything on account of plaintiff's loss.

The plaintiff thereupon, on August 4, 1932, brought this action against the defendant on its policy of insurance. She did not sue for the amount payable to her under the settlement made by her with the defendant's adjuster, $1222.87. The settlement was not referred to in her statement of claim. She sued to recover $2944.80, averring that the damage to the goods insured was $4908, of which $2944.80 was payable by defendant and $1963.20 by Northern Assurance Co.

When the case came on for trial, on January 27, 1933, the plaintiff moved to amend her statement, by claiming to recover from the defendant the sum of $1222.87 with interest from June 12, 1932, and averring the employment by the defendant of said Zieg as its agent to appraise the plaintiff's loss and to adjust the same by agreement with the plaintiff; the appraisement of the loss by the defendant's agent and adjuster at $2038.12, and the apportionment of the same between the two insurance companies, the amount payable by this defendant being $1222.87; the offer by defendant's agent and adjuster to pay plaintiff said amount on behalf of the defendant, and the acceptance thereof by the plaintiff, both as to said appraisal and settlement and offer of payment; the preparation of proofs in accordance therewith by defendant's agent, their signing and forwarding by plaintiff, and their retention by the defendant until June 14, 1932, when the defendant returned the proofs

and revoked the offer of settlement. Claim was made in the amended statement as follows:

"Twenty-third. Plaintiff therefore claims of defendant that it is indebted to the plaintiff for and on account of her loss and damage caused by said fire, under and by virtue of the covenants contained in said policy of insurance, and is indebted to the plaintiff under and by virtue of the defendant's promise and agreement to pay said loss as appraised and adjusted and agreed to by the defendant, in the sum of $1222.87, with interest thereon from June 12, 1932."

The court allowed the amendment and continued the case. The amended statement was filed within "twelve months next after the fire," and was therefore within the time fixed in the policy for bringing suit. In this respect it differed from the case of Grier Bros. v. Northern Assurance Co., 183 Pa. 334, 39 A. 10, where the Supreme Court held that an amendment, setting up a similar offer of settlement, accepted by the insured, could not be allowed, because it was filed after the time limit for bringing suit had expired; but recognized that the amendment would have been allowable if made within the time fixed in the policy for bringing suit. The Court (Mr. Justice GREEN) pointed out: "While the alleged undertaking is new it is neither independent of, nor separated from, the original cause of action. The policy of insurance still remains as the foundation of the action. The plaintiff's claim would have no force, in fact no legal existence, without the policy, and there could not possibly be any recovery without the maintenance and enforcement of the liability thereby created. If there was no contract of insurance there was nothing upon which to found a liability to pay anything whatever, and the alleged promise to pay by reason of the settlement necessarily is built upon, and grows out of, the contract liability created by the policy. It is an agreement, and it must necessarily be an agreement, to

determine what amount of liability exists under the policy. The essential foundation of any liability is the obligation imposed by the contract of insurance."

In Todd v. Quaker City Mutual Fire Ins. Co., 9 Pa. Superior Ct. 371, this court held that the lower court erred in refusing a similar amendment, saying through Judge ORLADY: "The cause of action was founded upon the refusal of the defendant company to pay the loss occasioned by the fire. The object of the amendment was not to forsake this but to adhere to it, and to effect a recovery through the promise of the defendant to do what it was bound to do, if the evidence of plaintiff was to be believed, after its liability had been fixed by the fire and the plaintiff had fully complied with her subsequent duty." See also Stainer v. Royal Ins. Co., 13 Pa. Superior Ct. 25, 42.

The fact that in her original statement of claim plaintiff sought to recover a larger amount than the defendant had agreed to pay by way of settlement did not estop her from amending her claim, within twelve months after the fire, by reducing the amount demanded to that which defendant had agreed to pay. She was not *concluded* by the demand contained in her original statement. She could have discontinued her original action and brought a new suit on the policy for the amount which defendant, by its authorized agent, had agreed to pay, and the bringing of the first action would not have estopped her from suing for the reduced amount agreed upon in settlement of the policy. As the amendment was made within the year and was based on the right of recovery under the policy, what she could do by way of a new action, she could do by amendment.

When the case came on for trial the second time there was no real dispute as to the facts set up in the amended statement of claim, viz., the employment of Zieg by the defendant, his authority to adjust and settle the claim,

and his adjustment of and agreement to settle the plaintiff's claim on the basis before stated. The defense was two-fold (1) that the amendment to plaintiff's statement was improperly allowed and (2) that plaintiff was not the sole and unconditional owner of the goods at the time of the fire.

(1) We have already considered the right to amend the statement and do not think it merits further discussion.

(2) We then come to the real ground of defense,—that which caused defendant to revoke or disavow the settlement made by its authorized agent, viz., that plaintiff was not the sole and unconditional owner of the goods at the time of the fire.

As plaintiff was admittedly the owner of the goods when the insurance was taken out, the burden was on the defendant to show a change in ownership at the time of the fire such as to relieve it of liability under the policy. Unless the defendant proved that plaintiff was not the sole and unconditional owner of the goods when the fire occurred, the plaintiff was entitled to a directed verdict.

We do not follow the trial court in holding that the defendant had such knowledge of the facts prior to making the agreement of settlement of April 22, 1932, as estopped it from refusing to carry out the settlement, even if plaintiff had not been the sole and unconditional owner of the goods at the time of the fire. But we do agree with the court that there was no evidence tending to defeat plaintiff's ownership, which warranted a submission of the case to the jury. Defendant's own witnesses proved that the constable's sale for rent under a distress warrant issued by her landlord was a matter of agreement between the landlord and his tenant, this plaintiff, by which, instead of continuing the sale for a week, in order to enable the plaintiff and her attorney to raise the funds demanded,

the sale was held and the goods were purchased by the landlord, on the express condition that title to them would not pass by the sale to the landlord until one week thereafter, during which time the plaintiff and her attorney would raise the necessary funds to discharge the rent claim, and in the meantime plaintiff would continue in the ownership and possession of the goods; that the fire occurred before the week had elapsed, and the landlord's demand had in the meantime been satisfied as agreed upon. It was not suggested that the fire was fraudulent or of incendiary origin. The evidence of the defendant showed that the sale was not consummated by delivery and was not intended to be consummated unless the plaintiff failed to pay the money demanded within the time set, viz., one week, which payment was made. The transaction as described by defendant's witnesses was an arrangement to transfer title in the future, in case of default in payment of rent and costs, rather than a present sale, passing immediate title or ownership,—a method of securing to the landlord the payment of his rent claim not later than a week thereafter, rather than a present passing of title and ownership.

In the light of the decisions of the Supreme Court and of this court [1], this did not constitute such a change in the plaintiff's ownership at the time of the fire, as to render the policy void.

The record, as printed, is longer than necessary. Where two trials are had, the evidence taken on the first trial is not a part of the record to be reviewed on appeal from the judgment on the second trial, unless

---

[1] Dunsmore v. Franklin Fire Ins. Co., 299 Pa. 86, 89, 149 A. 163; Livingstone v. Boston Ins. Co., 255 Pa. 1, 99 A. 212; Millville Mut. Fire Ins. Co. v. Wilgus, 88 Pa. 107; Hill v. Cumberland Valley Mut. Protection, 59 Pa. 474; Enyeart v. Farmers Fire Ins. Co., 65 Pa. Superior Ct. 425; Overholt v. Reliance Ins. Co., 319 Pa. 340, 179 A. 554.

offered in evidence at the second trial; which was not done in this case.

The assignments of error are overruled and the judgment is affirmed.